**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DE IVORY SMITH, ET AL.                    CIVIL ACTION

VERSUS                                     NO. 14-2623

MANHATTAN MANAGEMENT COMPANY, LLC, ET AL.       SECTION "B"(2)

## ORDER AND REASONS

### I.   NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Plaintiffs' "Motion to Conditionally Certify FLSA Collective Action and to Facilitate Notice under 29 U.S.C. § 216(b)" (Rec. Doc. 23), in which they seek conditional certification of a class for purposes of asserting claims for alleged violations by Defendants of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). Defendants have no objection to certification of a limited conditional class, as to those putative class members who share the same position as the named plaintiffs herein (after-hours telephone dispatchers); however, Defendants object to the class as currently defined by Plaintiffs in their motion and further object to Plaintiffs' proposed notice plan. (Rec. Doc. 30). Plaintiffs have filed a Reply in which they argue the addition of a new opt-in Plaintiff and the Court's discretion to divide any conditionally certified class into subclasses moot Defendants' objections to certification. (Rec. Doc. 35).

1

Defendants filed a Sur-reply disputing relevance and timeliness of the recently added potential opt-in plaintiff and her consent form, as well as challenging the propriety of the use of sub-classification in the present case. (Rec. Doc. 38). For the reasons that follow, **IT IS ORDERED THAT** Plaintiffs' Motion (Rec. Doc. 23) is **GRANTED IN PART**, and **DENIED IN PART**, as set forth fully below.

**II. FACTS AND PROCEDURAL HISTORY**

Plaintiffs De Ivory Smith and Marlie Trujillo resided and worked as after-hours telephone dispatchers at the Forest Isles Apartment Complex owned and operated by Defendants, Manhattan Management Co., LLC and Berk-Cohen Associates, LLC, in Algiers, Louisiana. (Rec. Doc. 1). In that capacity, Plaintiffs were generally required to field service calls from Forest Isles tenants, route those calls to appropriate service technicians, and maintain various records of the calls. (Rec. Doc. 23-1 at 5). Plaintiffs were paid a flat rate of pay for each night or weekend shift they worked in the form of a "rent credit" of $20 per weeknight shift and $40 per weekend shift. (Rec. Doc. 13-1 at 2). Alleging that this arrangement violated both the minimum wage and overtime requirements of the FLSA, 29 U.S.C. §§ 201, *et seq.*, Plaintiffs filed their Complaint in the instant action on November 17, 2014. (Rec. Doc. 1). In their Complaint, Plaintiffs additionally allege that other resident employees of Forest

2

Isles, who worked variously as "after-hours and weekend dispatchers, life guards and security personnel," were subjected to similar arrangements in violation of the provisions of the FLSA. (Rec. Doc. 23-1 at 5).[1]

On April 1, 2015, Defendants filed their Answer (Rec. Doc. 12) and immediately moved for summary judgment (Rec. Doc. 31), arguing Plaintiffs' allegations failed to establish a valid cause of action, in light of the "waiting to be engaged" and "homeworkers'" exceptions to the otherwise mandatory provisions of the FLSA. (See Rec. Doc. 31). The Court denied that motion on May 4, 2015, finding issues of fact sufficient to prevent Defendants' entitlement to judgment as a matter of law. (Rec. Doc. 27).

Plaintiffs now move for conditional certification of a class for purposes of bringing a collective action under 29 U.S.C. § 216(b). The putative class is defined as:

> Individuals who, since November 2011, previously worked or currently work for Defendants, Manhattan Management Co., LLC and Berk-Cohen Associates, LLC ("Defendants") as apartment dispatchers, life guards and/or security personnel known as "Unit 10" while they reside or resided on Defendants' premises and were compensated with "rent credits" but, through Defendants'

---

[1] On June 1, 2015, Plaintiffs filed with the Court a "Notice of Consent to Join FLSA Collective Action" by Rachelle Lee. (Rec. Doc. 29). Plaintiffs attached a declaration executed by the same individual to their reply in support of the instant motion indicating that she worked in the capacities of both after-hours security guard and pool monitor for Defendants. (Rec. Doc. 35-1).

use of "rent credits" to compensate them, were not properly paid overtime and/or minimum wage as mandated by the FLSA.

(Rec. Doc. 23 at 1-2).

In addition to the above, Plaintiffs request that the Court exercise its discretion to facilitate notice to potential class members by approving Plaintiffs' proposed notice plan, which would require that: (1) Defendants produce a database of names, last-known mailing addresses, telephone numbers, and social security numbers of potential class members within 14 days; (2) Defendants post a copy of a bulletin notice in their workplace in an area readily visible to all employees; (3) potential class members submit consent forms to Plaintiffs' counsel within 120 days after the date on which the notice is mailed; and (4) that Defendants' counsel file consent forms with the Court on an ongoing basis and no later than two weeks after conclusion of the 120-day notice period. (Rec. Doc. 23-1 at 16).

## III. CONTENTIONS OF MOVANT

Plaintiffs argue they have satisfied their burden of establishing that they and the potential class members are "similarly situated" for purposes of the first step of the two-step *Lusardi* class certification process generally applied by district courts in the Fifth Circuit in the context of FLSA collective actions. (Rec. Doc. 23-1 at 10). At this stage, Plaintiffs need only make a preliminary showing that potential

4

opt-in plaintiffs and the named plaintiffs were subject to a single decision, policy, or plan and shared similar job requirements and pay provisions. (Rec. Doc. 23-1 at 9, 10). According to Plaintiffs, their declarations submitted in connection with the instant motion show Defendants maintained common scheduling and compensation policies applicable to the named Plaintiffs and members of the putative class, including: (1) flat rates of pay, (2) failure to pay the federally-mandated minimum wage, (3) failure to pay overtime for hours worked in excess of 40 per week, (4) failure to keep accurate records of the hours worked by Plaintiffs, and (5) misleading Plaintiffs and potential class members about the law regarding minimum wage and overtime pay. (Rec. Doc. 23-1 at 12). Accordingly, Plaintiffs request that the Court approve their proposed notice plan, arguing it is similar to plans previously approved by other courts within the Fifth Circuit.

## IV. CONTENTIONS OF OPPONENTS

Defendants begin by noting they do not oppose conditional certification of a class composed of individuals who held the same position as the named Plaintiffs; *viz.*, after-hours telephone dispatchers. (Rec. Doc. 30 at 1). As to the other members of the proposed class as currently defined by Plaintiffs (to include Unit 10/property monitors and pool monitors), Defendants argue these individuals are not "similarly situated"

for purposes of the collective action certification rules applicable under the FLSA. (Rec. Doc. 30 at 1). Defendants argue dissimilarity in job duties and compensation schemes is fatal to conditional certification under applicable case law within the Fifth Circuit. Because Plaintiffs fail to establish in what manner the named telephone-dispatcher Plaintiffs' job duties were similar to those of Unit 10/property monitors or pool monitors, Defendants argue the Court should not certify a class defined to include these individuals. Further, Defendants outline the different compensation schemes applicable to the respective positions to argue against certification.

Defendants also object to certain features of Plaintiffs' proposed notice plan, including the requirement that Defendants produce telephone and social security numbers for potential class members as well as various production and filing deadlines outlined therein. Defendants propose that the Court require the parties to meet and confer for purposes of confecting a jointly agreed class definition and notice plan.

In their Reply, Plaintiffs argue they have shown that individuals performing the various job duties included in the proposed class were subject to a common decision, policy, or plan; namely, the rent-credit payment scheme which deprived them of overtime and minimum wage payments. Plaintiffs further argue the Court's discretion to divide the conditional class into

subclasses where appropriate compels in favor of certification. Finally, Plaintiffs note Defendants have already been sued for similar alleged FLSA violations by Forest Isles office workers. Defendants' objection to adding the instant claims to that litigation prompted the filing of this suit, which was transferred to this section of Court in light of the related pending suit. Plaintiffs argue failure to certify the class as presently defined would merely lead to the filing of additional lawsuits on behalf of individuals who held the positions discussed above, which would be transferred to this section for treatment in a manner contrary to principles of judicial economy.

**V. CONDITIONAL CERTIFICATION STANDARD**

   **A. 29 U.S.C. § 216(b) – Right to Proceed by Collective Action**

Section 16(b) of the FLSA prescribes damages and defines the right of action for employees against their employers for violations of the overtime and minimum wage provisions of the Act. 29 U.S.C. § 216(b). Relevant for present purposes, that section includes a collective action provision under which a person may maintain an action: "on behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in

writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

## B. Certification Procedure

Certification of a FLSA collective action typically proceeds under a two-step process, sometimes referred to as the "*Lusardi* approach." *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Although the Fifth Circuit has refused to endorse either of the two existing methods of FLSA collective action certification, *Lusardi* is the prevailing approach. *See Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873 (E.D. La. Sep. 23, 2008)("[I]t is clear that the two-step ad hoc [*Lusardi*] approach is the preferred . . . ."); Green *v. Plantation of Louisiana, LLC*, No. 10-0364, 2010 WL 5256354, at *4-5 (W.D. La. Nov. 24, 2010)("This method is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.* that '[t]here is a fundamental, irreconcilable difference between the class action described by [FRCP] Rule 23 and that provided for by FLSA § 16(b) . . . ."); THE FAIR LABOR STANDARDS ACT § 19-15 (Ellen C. Kearns, et al. eds., 2d ed. 2010)[hereinafter, Kearns].

> At the first stage, referred to as the "notice stage" or "conditional certification" stage, the trial court makes the determination whether notice of the action should be given to potential opt-in

> plaintiffs and whether the case should initially proceed as a collective action. If conditional certification is granted, the action then proceeds as a representative action throughout discovery.
>
> At the second stage, the court makes the determination of whether the case should continue to be certified as a collective action for trial. The second-stage determination is usually based on the employer's motion filed at or near the end of discovery requesting that the court decertify the case as a collective action.

Kearns, *supra*, at §19-17, 19-18; *see also*, *Green, supra*, at *5. The fundamental inquiry at both stages is whether the named plaintiffs and members of the potential FLSA collective class are "similarly situated" for purposes of Section 16(b). *Id.*

### C. Notice Stage

At the notice stage, district courts typically apply a "fairly lenient standard." *Mooney*, 54 F.3d at 1214. This requires plaintiffs to make "a modest factual showing that the putative class members were together the victims of a single decision, policy, practice, or plan that violated the law." Kearns, *supra*, at §§ 19-20, 19-21 (citing, *inter alia*, *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003)). The Court decides, "usually based only on the pleadings and any affidavits which have been submitted," whether

notice of the action should be given to potential class members. *Green*, *supra*, at *5 (citing *Mooney*, 54 F.3d at 1213).

Section 16(b) does not define the term "similarly situated." Thus, "[w]hether employees are 'similarly situated' for purposes of the FLSA is determined in reference to various factors, including their 'job requirements and . . . pay provisions.'" *Xavier*, 585 F. Supp. 2d at 877 (citing *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007)). Such a determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus that binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Id.* at 877-78 (internal citations and quotation marks omitted). A plaintiff's right to proceed collectively under the FLSA may be foreclosed only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.* (citing *Crain v. Helmerich and Payne Int'l Drilling Co.*, No. 92-0043, 1992 WL 91946 (E.D. La. Apr. 16, 1992)).

Finally, in determining whether to grant conditional certification at the notice stage, courts must be conscious of their duty to "refrain from stirring up unwarranted litigation." *Xavier*, 585 F. Supp. 2d at 878 (citing *Lentz v. Spanky's*

10

*Restaurant II, Inc.*, 491 F. Supp. 2d 663, 668-69 (N.D. Tex.
2007)). Employers should not be unduly burdened by a frivolous
fishing expedition conducted by the plaintiffs at the
defendants' expense. *Xavier*, 585 F. Supp. 2d at 878.
Nevertheless, "a collective action can be an effective mechanism
for resolving common issues in one consolidated action." *Green*,
*supra*, at *6 (citing *Hoffman-La Roche*, 493 U.S. 165, 170
(1989)). Accordingly, courts must "strive to balance the
efficiency of aggregating claims in one action against the
expense and inconvenience of frivolous litigation." *Id.* (citing
*Sims v. Housing Auth. City of El Paso*, 2010 WL 2900429, *2 (W.D
Tex. 2010)).

**VI. DISCUSSION**

   **A. Conditional Certification**

   As noted above, Defendants concede that conditional
certification is appropriate here as to those members of the
potential class who held the same after-hours telephone
dispatcher position as Plaintiffs Smith and Trujillo.
Accordingly, the only remaining certification issue for the
Court is whether, as Defendants contend, alleged dissimilarities
in the job duties and compensation schemes applicable to Unit
10/property monitors and pool monitors vis-à-vis the named
plaintiffs preclude conditional certification as to those
members of the potential class. Plaintiffs counter that, under

11

Defendants' asserted standards, certification would effectively only be granted where potential class members held positions identical to the named plaintiffs', an approach inconsistent with Section 16(b)'s "similarly situated" standard. They further argue they have made a sufficient showing of a common policy, plan, or decision, applicable to the entire potential class, so as to warrant certification.

**B. Plaintiffs' Proposed Class**

The class proposed by Plaintiffs is effectively composed of individuals holding three job positions: (1) telephone dispatchers, (2) Unit 10/property monitors, (3) and pool monitors. In their opposition to Plaintiffs' motion, Defendants set forth the job descriptions for each of these groups and argue that the differences in their responsibilities render conditional certification inappropriate. The record reflects that after-hours telephone dispatchers and Unit 10/property monitors were paid under a flat-rate scheme that did not account for hourly wages. On the other hand, Defendants submitted evidence that pool monitors were paid an hourly wage. (See Rec. Doc. 30-1 at 2)(Declaration of Stephen Enslow, Forest Isle Asset and Property Manager). This evidence is consistent with the declaration of potential opt-in plaintiff Rachelle Lee, who confirmed that she was paid an hourly wage for her work as a pool monitor, although she claims to have never received

overtime payments to which she was entitled. (See Rec. Doc. 35-1 at 1)(Declaration of Rachelle Lee). For reasons explained more fully below, this difference in compensation schemes is material and warrants limiting the proposed class definition in this case.

In support of their position against conditional certification, Defendants cite a number of cases, which they contend demonstrate that dissimilarity in job duties and compensation schemes precludes conditional certification at the notice stage. Because we find the precedent relied upon to be informative, though distinguishable as to members of the proposed class who held the positions of telephone dispatchers and Unit 10/property monitors, we visit those cases in turn.[2]

### i. *Green*

In *Green v. Plantation of Louisiana, LLC*, No. 10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010), the plaintiffs sought conditional certification of a class composed of former exotic dancers, waitresses, shot girls, door girls, bar tenders, and bouncers at the defendant establishment. The plaintiffs alleged generally that the defendant had violated the minimum wage and overtime wage provisions of the FLSA. *Id.* at *1. While the *Green*

---

[2]  Rulings on conditional certification are typically interlocutory, accordingly there is a relative dearth of circuit-level precedent on many of the issues confronted in reaching such a decision. As such, much of the relevant precedent on these issues has developed through the district courts. Citations herein are therefore often to district court opinions.

court engaged in a thorough and detailed discussion of the legal standards applicable to a FLSA collective action certification decision, a number of items render that court's ultimate ruling against certification inapposite here.

First, the court reviewed the various affidavits and supporting evidence submitted to conclude that there was no indication that the allegedly unlawful policies were systematically implemented as to all employees. *Id.* at *6. That is to say, two employees who nominally held the same position (*e.g.,* two waitresses) may have been compensated on an hourly wage or wage-and-tips basis, respectively. *See id.* ("Most tellingly, the evidence submitted by the plaintiffs suggests that employees within a particular class were not compensated alike.") Second, there was no consensus among the parties, or even among the potential plaintiffs, as to how to divide the potential class into subclasses, an alternative that had been advocated by the named plaintiffs. *Id.* at *9. Accordingly, the Court was compelled to conclude that there was no factual nexus binding the plaintiffs' claims together, and that "the only similarity between the plaintiffs appear[ed] to be that they all worked for the [defendant] and that they all claim[ed] violations of the FLSA." *Green*, *supra*, at *7.

Notably, and relevant for present purposes, the Court distinguished authority relied upon by the plaintiffs to argue

14

in favor of sub-classification among the various positions included in the proposed class. *Id.* at *8. In the cited case, *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998), the class of plaintiffs held various positions at the defendant's restaurants: waiters, porters, dishwashers, cooks, etc. The plaintiffs in *Realite* complained that each member was purportedly paid at a fixed weekly rate, regardless of the number of hours actually worked, and in accordance with the defendant's challenged uniform fixed rate policy, which was allegedly implemented to avoid payment of minimum wages and overtime. *Realite*, at 304, 307. As the *Green* court put it: "The defendant's uniform payment of the fixed weekly rate to all class members was thus the common issue to be tried collectively," and the *Realite* court granted conditional certification. *Green*, at *8. By contrast, the plaintiffs in *Green* complained of disparate and inconsistently implemented policies that were not homogenous and did not lend themselves to collective inquiry. *Id* at *9. As set forth more fully below, the claims of the potential telephone monitor and Unit 10/property monitor classes in the instant matter are more analogous to those in *Realite* than in *Green*, a conclusion that weighs in favor of conditional certification.

### ii. *Harris*

In *Harris v. Fee Transp. Servs, Inc.*, No. 05-77, 2006 WL 19944586, at *1 (N.D. Tex. May 15, 2006), the court denied certification to a potential class composed of customer service representatives, account managers, billing clerks, driver associates, driver managers, and fleet managers who worked for the defendants. As a preliminary matter, it must be noted that due to substantial prior discovery, the Court analyzed the certification issue under the heightened "stage two" standard. *Id.* at *4. Accordingly, the Court focused on the prospect of individualized claims and defenses of the parties; considerations not properly before the court at a "stage one" inquiry. *See* Kearns, *supra*, at § 19-41 ("Employers commonly argue that the employees' claims or that the employer's defenses are too individualized for conditional certification. Courts generally do not deny conditional certification at the notice stage based on such allegations and instead hold that these issues are better raised in a motion to decertify a class after discovery has been conducted.") Although the *Harris* court noted that it would have ruled against certification even under the more lenient "stage one" standard, there are further reasons for distinguishing that case. *See Harris*, *supra*, at *4.

Much as in *Green*, *supra*, the evidence reviewed by the Court (which, it bears repeating, was substantially more developed than that presently before this Court), indicated a lack of

16

uniformity in the job duties and policies applicable even as between individuals sharing the same nominal position. In *Harris*, "some of the class members challenge[ed] their classification as exempt, while other plaintiffs [were] already classified as non-exempt and [appeared] to allege that their hours were not properly recorded." *Harris*, 2006 WL 1994586, at * 3. Because again the issue in *Harris* related to a lack of uniformity of job duties as well as application of employer policy among the employees holding a particular position, that case is distinguishable at present where there appear to be no similar issues of internal uniformity among the positions contained in the potential class as presently defined.

### iii. *Xavier*

In *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873 (E.D. La. 2008), the issue again related to claims that plaintiffs and potential class members had been improperly classified as "exempt" under the FLSA. In that case, the potential class was composed of all subcontractors who performed labor for the defendant at any time in the prior three years and did not receive overtime compensation. *Xavier*, 585 F. Supp. 2d 873. Again, the *Xavier* court was considering a far more complete evidentiary record, which had developed over the course of a previously denied motion for class certification under Fed. R. Civ. P. 23 and various rounds of pleading amendment. *See id.* at

17

875. The plaintiffs therein argued the defendant structured its employment relationships through sham subcontracting arrangements so as to deprive individuals who were effectively its employees of overtime by treating them as independent contractors. *Id.* at 878-79. The plaintiffs pointed to no particular policy or decision of the defendant, and alleged violations on behalf of "all persons similarly situated 'nationwide' who performed manual labor on [the defendant's] projects at any time within three years prior to the filing of the initial complaint and who did not receive overtime compensation." *Xavier*, 585 F. Supp. 2d at 875. In addition to concluding that the plaintiffs had failed to point to ***any*** policy or decision of the defendant employer, the court noted:

> While the named plaintiffs and potential opt-in plaintiffs may all have been denied overtime payments, the similarity ends there. The action taken by each of the subcontractors at each Belfor job site would have to be reviewed and individually analyzed to determine, *inter alia*, whether a violation occurred and whether Belfor would be liable for such a violation. During the time period at issue, Belfor utilized 2100 subcontractors in at least forty-four states at different job sites. . . . Each subcontractor had a different business relationship with Belfor. . . . Belfor has shown that the specific circumstances of each worker is personal to his or her job experience with each of the subcontractors. As stated *supra*, the named plaintiffs have not shown that their circumstances and experiences with the payroll practices of the specific

18

> subcontractor were similar to the payroll
> practices of the remaining workers who
> worked for those 2100 or so subcontractors
> who contracted with Belfor. There is simply
> no evidence of a generally applicable policy
> or practice and the individual circumstances
> of each worker is too particularized to
> warrant collective certification nationwide.
> . . .
>  The Court cannot make such a certification
> based upon the showing made and given that
> the facts of this case would require too
> particularized and individualized an
> analysis of each worker's situation. The
> claims of plaintiffs are better tried as
> individual cases based upon the conditions
> at each different job site or by
> subcontractor.

*Xavier*, 585 F. Supp. 2d at 880. Accordingly, in addition to the failure to identify a single policy or decision of the defendant, the sheer numerosity and geographic breadth of the proposed class cut against the ability to efficiently handle the various plaintiffs' claims through collective treatment. *See also*, Kearns, *supra*, at § 19-37("[C]ourts have limited the geographic scope of the notice in cases where plaintiffs have failed to allege or provide sufficient supporting affidavits or other evidence of similar violations outside of the geographic location in which the plaintiffs were employed."). The lack of similar issues here, where the proposed class consists of current or former employees of a single apartment complex, and which relate to alleged FLSA violations stemming from fixed-rate compensation schemes, distinguishes *Xavier* and weighs in favor

19

of conditional certification under the relatively lenient stage-one standard.

### C. Application

As the foregoing reveals, conditional certification is not warranted where collective treatment would be impractical because individualized issues, personal to the various potential opt-in plaintiffs, predominate. This is most frequently seen where there is evidence of inconsistent treatment or application of job duties and compensation schemes among individuals holding the same nominal position. *See Green* and *Harris*, *supra*. Stage one certification is further unwarranted where the sheer breadth of the potential class and the failure to identify a single policy of the employer frustrates collective treatment, as in *Xavier*, *supra*. Where, however, the plaintiffs have made a preliminary showing of a common policy, and nothing indicates inconsistency in treatment among individuals holding a particular job position, such that "a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus," conditional certification should be granted. *See Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 814 (N.D. Ill. Jun. 28, 2010).

Here, the named Plaintiffs complain that a fixed-rate rent credit program implemented by Defendants, and applicable to after-hours telephone dispatcher and Unit 10/property monitor

employees, operated to deprive them of minimum wage and overtime payments due under the FLSA. While the proposed class consists of members holding three different positions, those positions are readily identifiable and there has been no evidence that the members of each group: telephone dispatchers, security personnel, and pool monitors were subject to internally inconsistent job duties or employment policies. Plaintiffs have further satisfied, at least preliminarily, their duty to show the likelihood that other individuals exist who would have an interest in joining the collective action. *See, e.g., Simmons v. T-Mobile USA, Inc.* (S.D. Tex. Jan. 24, 2007)("[A] showing is necessary that at least a few similarly situated individuals seek to join the lawsuit . . . .").

Nevertheless, as to the potential pool-monitor plaintiffs, the differences inherent in their compensation scheme, which evidence presented by both sides indicates was structured based on an hourly rate of pay, is too attenuated from the other potential plaintiffs' claims pertaining to fixed-rate payments. (Rec. Doc. 35-1 at 1). This suggests that issues particular to the pool monitor plaintiffs would predominate in a manner not appropriate for treatment as a collective action together with the other plaintiffs' claims, and the conditional class must be limited to exclude these individuals.

Plaintiffs' allegations concerning the telephone dispatchers and Unit 10/property monitors, however, are more analogous to those at issue in *Realite*, *supra*, where conditional certification was granted, than in *Green*, where it was denied. While the potential plaintiffs hold or held different positions, they all effectively complain that a similar policy operated to deprive them of compensation to which they were entitled under the FLSA. While there may be some differences among their job duties, there is, at least as of yet, no indication that the challenged policies were not uniformly implemented as between each position. *See, e.g., Walker v. Honghua America, LLC,* 870 F. Supp. 2d 462, 470 (granting conditional certification when evidence suggested Crane Operators and Roughneck/Riggers were similarly situated within their respective groups and complained of a similar overtime policy, although differing in their particular jobs duties); *Aguilar v. Complete Landsculpture, Inc.*, No. 04-0776, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004)(finding conditional certification proper despite foremen and laborers having somewhat different duties and rates of pay, "where they all complain[ed] of the same 'block rate' scheme that applied to them similarly."); *Donohue v. Francis Servs., Inc.*, No. 04-170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004)("Whether at the notice stage or on later review, collective action certification is not precluded by the fact

22

that the putative plaintiffs performed various jobs in differing departments and locations."). Thus, the claims share a sufficient nexus of fact and law as to warrant collective treatment at this preliminary notice stage. Should it prove through discovery that individualized and purely personal issues predominate, Defendants may then move for de-certification, so as to trigger a closer review of the claims at issue, and/or a limiting of the certified class as appropriate.

Finally, as Plaintiffs accurately note, denial of conditional certification here would likely merely prompt the filing of additional suits on behalf of each of the foregoing groups; a result inconsistent with principles of judicial economy where the defendants and subject policies would otherwise overlap, and for which the FLSA collective action is designed to promote efficient resolution.

In light of the foregoing, **IT IS ORDERED THAT** Plaintiffs' Motion is **GRANTED, IN PART**, so as to conditionally certify a class composed of telephone dispatchers and Unit 10/property monitors, as defined therein, while excising the pool monitors.

As to Plaintiffs' proposed notice plan, the issues raised by Defendants ought properly to be resolved by common agreement of the parties. Accordingly, **IT IS ORDERED THAT** Plaintiffs' Motion is **DENIED, IN PART**, as to that portion requesting approval of the notice plan proposed therein. However, **IT IS**

**FURTHER ORDERED** that the parties are directed to meet, confer, and thereafter submit to the Court a joint proposal of notice no later than **twenty-one** days of entry of the Court's order. In connection with that same endeavor, the parties shall work to agree on a proposed class definition consistent with the Court's statements above, which includes the potential telephone dispatcher and Unit 10/property monitor plaintiffs. Issues of sub-classification shall be addressed in connection with same.

New Orleans, Louisiana, this 6th day of July, 2015.


_____

UNITED STATES DISTRICT JUDGE