UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DE IVORY SMITH AND<br>MARLIE TRUJILLO | ) | |
| | ) | |
| | ) | CIVIL ACTION NO.:  2:14-cv-02623 B(2) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | JUDGE IVAN L.R. LEMELLE |
| | ) | |
| MANHATTAN MANAGEMENT | ) | |
| COMPANY, L.L.C., *ET AL*. | ) | MAGISTRATE JOSEPH C. WILKINSON |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |
| | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendants Manhattan Management Company, L.L.C. and Berk-Cohen Associates, L.L.C. (collectively, "Defendants") respectfully submit this Memorandum in Opposition to the Motion for Partial Summary Judgment filed by Plaintiffs. Doc. 62. As set forth herein, Plaintiffs have not demonstrated that they are entitled to partial summary judgment as to Defendants' liability under the Fair Labor and Standards Act ("FLSA").

**OVERVIEW**

Plaintiffs are residents of Forest Isle who, in addition to their day time jobs, voluntarily worked at the complex during nights and weekends as telephone dispatchers and Unit 10/property monitors. Plaintiffs agreed to be compensated a flat rate of pay for each shift worked in the form of a credit applied as a cash payment to their preexisting rent obligations. In this lawsuit, Plaintiffs claim that the flat rate of pay per shift they received violated Section 206 of the FLSA, which establishes a minimum wage for employees of $7.25 per hour, and Section 207, which requires that employees be compensated at time-and-a-half their regular rate for all hours worked in excess of forty per week. Doc. 1.

Defendants previously moved for summary judgment, arguing that the requirements contained in Sections 206 and 207 do not apply to Plaintiffs pursuant to the homeworkers' exception and the waiting to be engaged doctrine. Doc. 13. In ruling on Defendants' motion, this Court acknowledged that while "[t]he provisions [Sections 206 and 207] of the FLSA are presumed to apply to employees such as Plaintiffs, **Defendants are entitled to rebut this presumption by establishing, for example, that the 'waiting to be engaged' doctrine or 'homeworker's exception' applies.**" Doc. 27 at 6 (citations omitted and emphasis added).

This Court also held that additional evidence was necessary to determine whether the two exceptions applied and ordered that "[t]he parties shall continue to pursue focused discovery,

1

particularly with respect to issues regarding leisure time of putative class members." Doc. 27 at 9.  The parties are engaged in discovery; although as of this filing only one deposition – that of opt-in plaintiff Alfred White – has occurred.

In the instant motion, Plaintiffs ask this Court to hold that Defendants are required to pay minimum and overtime wages to each plaintiff pursuant to Sections 206 and 207, and Defendants are legally barred from relying on the waiting to be engaged doctrine or the homeworker's exception.  Specifically, Plaintiffs assert the regulations implementing Sections 206 and 207 require not only that employees be paid minimum and overtime wages, but also that the wages (1) be paid in cash or its equivalent,[1] and (2) be paid "finally and unconditionally or 'free and clear.'"[2] Circuitously, Plaintiffs argue that Defendants must comply with these additional requirements of Sections 206 and 207 as a predicate to Defendants' reliance on the exceptions to the *applicability* of Sections 206 and 207.

Plaintiffs' motion should be denied because their arguments are legally flawed and factually disputed.  First, as discussed in Section I, summary judgment should be denied for the sole reason that Plaintiffs' new and novel arguments were never pled and their assertion of them for the first time in their motion constitute an unfair and prejudicial surprise to Defendants under Federal Rule of Civil Procedure 8.

Second, as discussed in Section II, even if the Complaint included a claim that Defendants' use of rent credits violated the regulations promulgated by the Department of Labor ("DOL") regarding the payment of wages under Sections 206 and 207, the jurisprudence is clear that the threshold inquiry remains whether the waiting to be engaged doctrine and/or the homeworker's exception apply.  Only if the Court determines that the two exceptions do **not**

---

[1] 29 C.F.R. § 531.27.
[2] 29 C.F.R. § 531.35.

2

**apply** does it reach the question of whether rent credits are lawful wage. And payment of cash wage is not a prerequisite to application of the exceptions; rather, under the homeworker's exception, the form of payment is only one factor considered in determining whether the parties' agreement regarding compensation was reasonable.

Finally, as discussed in Section III, even if the Court were to reach this issue, summary judgment would still be inappropriate because Defendants' payment with rent credits is a lawful wage. Rent credits are equivalent to cash and are not "scrip." Plaintiffs, like all residents, were obligated to pay the **cash** amount in their leases as monthly rent. Defendants applied the rent credits as **cash payments** to Plaintiffs' pre-existing rent obligations and thus, Plaintiffs' other monies were freed up for them to spend as they wanted. Rent credits are not an impermissible "kick back" because they primarily are for the benefit of Plaintiffs who became residents of Forest Isle pursuant to lease agreements before agreeing to serve as dispatchers or Unit 10/property monitors, and their rent obligations exist separate and apart from their work. Alternatively, even if the Court were to determine that rent credits are not "cash or its equivalent," rent credits are lawful wages because they constitute reasonable cost of facilities and lodging under Section 203(m), a fact intensive analysis which is inappropriate on summary judgment.

For the foregoing reasons, set forth fully below, Plaintiffs' motion for partial summary judgment should be denied.

## FACTUAL BACKGROUND

Defendants own and operate the Forest Isle Apartment complex located in Algiers, Louisiana.[3] When the office at the complex is closed (on nights and weekends), residents can report maintenance issues and other concerns by calling a designated telephone number or

---

[3] The complex is owned by Berk-Cohen; MMC manages the complex.

977526v.4

sending an on-line service request. These after-hours telephone calls and on-line requests are received by a dispatcher who routes requests to the on-duty maintenance technician or Unit 10/property monitor, as needed. During the same hours, Unit 10/property monitors occasionally perform certain tasks for residents, including for example, delivering notices and packages, monitoring complex grounds, and providing restroom breaks to the security guard.[4]

Plaintiffs are residents of Forest Isle who volunteered to work as dispatchers and Unit 10/property monitors during nights and weekends.[5] Importantly, Plaintiffs were residents of Forest Isle *prior* to accepting extra work as dispatchers and/or Unit 10/property monitors, and their decision to rent an apartment at Forest Isle was totally unrelated to their later agreement to work as a dispatcher or Unit 10/property monitor.[6] As opt-in Plaintiff Alfred White testified:

> Q. Okay. Did you know about the Unit 10 position before you moved to Forest Isle?
> A. Before I moved there? Oh, no. No. No. No. Not even hardly, no.[7]
>
> ***
>
> Q. [Y]ou would have lived at Forest Isle regardless of whether or not you worked as a Unit 10?
> A. Yes, ma'am.[8]

The evidence developed to date shows that dispatchers generally received fewer than ten (10) calls per shift, and that during certain shifts, no calls were received.[9] With respect to Unit 10/property monitors, the evidence confirms that they periodically performed inspections and

---

[4] Declaration of Nicole Borowski, attached hereto as Exhibit A, at ¶ 7,

[5] Alfred White Deposition, excerpts attached hereto as Exhibit B, at 23; Employment Application of De Ivory Smith, attached hereto as Exhibit G-1, at FOREST_ISLE-000552; Declaration of Anna MacLellan, attached hereto as Exhibit H, at ¶¶ 1-5; Declaration of Willie Williams, attached hereto as Exhibit I at ¶¶ 1-4.

[6] *See* Declaration of Anna MacLellan at ¶¶ 3-4; Declaration of Willie Williams at ¶¶ 3-4.

[7] *See* Alfred White Deposition at 23.

[8] *See* Alfred White Deposition at 164-165; Declaration of Anna MacLellan at ¶ 4; Declaration of Willie Williams at ¶ 4.

[9] Telephone dispatchers receive calls that, at their option, may be forwarded to either their cellular phone or landline in their apartments. Following each shift, telephone dispatchers turn in a log of calls they answered during their shift. Declaration of Stephen Enslow, attached hereto as Exhibit C at ¶ 3, 7, 8. *See* De Ivory Smith Email and Dispatch Log for 1/15/13; De Ivory Smith Email and Dispatch Log for 4/18/13, attached here to as Exhibit G-4, at FOREST_ISLE-000435, De Ivory Smith Email and Dispatch Log for 1/15/13, attached hereto as Exhibit G-3, at FOREST_ISLE-000214-000215.

other tasks from 5PM to 11PM (on a weeknight shift) or 9AM to 11PM (on a weekend shift).[10]

Thereafter, Unit 10/property monitors were required to respond to calls received from dispatcher

and prepare reports of the activities that occurred during each shift.[11] These reports reveal that,

on average, Unit 10/property monitors receive 3-7 calls during each shift.[12] These reports also

confirm that during certain shifts, Unit 10/property monitors received no calls.[13]

Defendants exercised little to no control over how the dispatcher and Unit 10/property

monitors spent their time during their shifts. Aside from the occasional work described above,

Plaintiffs were free to sleep, eat, entertain friends, watch television, play on their computers,

walk around the premises for their personal enjoyment, use the pool, and do laundry.[14] As Mr.

White confirmed, Plaintiffs were free to select their shifts and the number of shifts.[15] Mr. White

also confirmed that in the event Plaintiffs selected a shift but later found out that they could not

work for any reason, they were free to find a replacement or contact their supervisor to find a

replacement.[16] And, Mr. White testified that Plaintiffs were allowed to leave in the middle of

their shift with prior notice and Plaintiffs were allowed to work partial shifts with prior notice.[17]

Mr. White testified that, when necessary, Plaintiffs were allowed to end their shifts early in order

to accommodate their day jobs with no reduction in pay.[18]

---

[10] Declaration of Nicole Borowski at ¶ 6; Alfred White Deposition at 30.
[11] Declaration of Nicole Borowski at ¶ 6.
[12] Alfred White Deposition at 35, 158. *See* Alfred White Email and Reports for 9/24/12, attached hereto as Exhibit G-5, at FOREST_ISLE-001358.
[13] Alfred White Deposition at 125, 158. *See* Alfred White Email and Reports for 1/29/13, attached hereto as Exhibit G-6, at FOREST_ISLE-001218.
[14] Declaration of Steve Enslow at ¶ 6; Declaration of Nicole Borowski at ¶¶ 4, 5; Alfred White Deposition at 153-54; Declaration of Anna MacLellan at ¶¶ 10-11; Declaration of Willie Williams at ¶¶ 10-11.
[15] *See* Excerpts from Defendants' Responses to Plaintiff De Ivory Smith's Discovery Requests, attached hereto as Exhibit D at pp. 3-4; Rachelle Lee 11/22/2012 email, attached hereto as Exhibit G-7, at FOREST_ISLE-000841; Alfred White Deposition at 100; Declaration of Anna MacLellan at ¶ 9; Declaration of Willie Williams at ¶ 9.
[16] *See* Excerpts from Defendants' Responses to Plaintiff De Ivory Smith's Discovery Requests, G-7 at pp. 3-4; Alfred White Deposition at 67-68.
[17] Deposition of Alfred White at 132-134; *See* Alfred White Email and Reports for 12/29/12, attached hereto as Exhibit G-8, at FOREST_ISLE-001386.
[18] Deposition of Alfred White at 107-108.

5

In exchange for their occasional work, Plaintiffs agreed to receive payment of generally flat rates of pay in the form of a credit, applied as a cash payment to their preexisting rent obligations.[19] Telephone dispatchers worked from their homes in exchange for a flat rate of pay of $20 for each weeknight shift they worked, and $40 for each weekend shift.[20] Unit 10/property monitors worked in or near their homes in exchange for a flat rate of pay of $56 for each weeknight shift they worked, and $112 for each weekend shift, plus $10-$30 for each lockout that the Unit10/property monitor assisted with during his or her shift.[21]  While Defendants generally paid Plaintiffs in the form of a credit to their rent obligation, they did not pay Plaintiffs solely in "rent credits."  For example, when Plaintiffs undertook additional work that exceeded what the rent credits were intended to cover, Defendants paid Plaintiffs additional sums of monies by check.[22]

Additionally, the evidence establishes that Plaintiffs had day jobs,[23] but accepted the extra work for the benefit of receiving credits to their pre-existing rent.[24]  As Mr. White testified:

> Q. Would you agree with me that you have to pay the rent amount in your lease regardless of whether or not you worked as a Unit 10?
> A. Yes, ma'am.
> Q. And would you agree that with your rent credit you pay a smaller amount of your rent every month?
> A. Yes, ma'am.[25]

---

[19] Doc. 1, referred hereto as "Complaint," at ¶ 5; Enslow Declaration, at ¶ 4;

[20] Complaint at ¶ 4; Enslow Declaration at ¶ 4;Declaration of Jennifer Herman, attached hereto as Exhibit E, at ¶9; Declaration of Shontel Latimore, attached hereto as Exhibit F, at ¶ 3) g).

[21] Declaration of Nicole Borowski at ¶7.

[22] *See* Email and Attachment Regarding Payment in Check to Opt-in Plaintiff Rachelle Lee (formerly DellaVecchia), attached hereto as Exhibit G-2.

[23] For example, Alfred White worked for the Marines while he worked as a Unit 10/property monitor. Alfred White Deposition at 10-13. De Ivory Smith worked as a teacher during the time she worked as a dispatcher. *See* Employment Application of De Ivory Smith at FOREST_ISLE-000552.

[24] Declaration of Anna MacLellan at ¶¶ 6-7; Declaration of Willie Williams, at ¶¶ 6-7.

[25] *See* Alfred White Deposition at 174-175.

## PROCEDURAL HISTORY

Plaintiffs commenced this lawsuit on November 17, 2014, seeking recovery of compensation allegedly owed to them under Sections 206 and 207 of the FLSA. Doc. 1. Specifically, Plaintiffs allege that, pursuant to Section 206(a)(1) of the FLSA, they were entitled to be paid an hourly rate of pay for the entirety of each dispatch shift, and pursuant to Section 207(a)(1), they were entitled to be paid time-and-a half in weeks where the total duration of their dispatch shifts exceeded 40 hours. *Id.* at ¶¶ 41-49.

On April 1, 2015, Defendants filed their Answer to the Complaint in which they asserted:

> Plaintiffs' idle time is not compensable under the "waiting to be engaged" doctrine, 29 C.F.R. §§ 785.14-17, and the "homeworker's exception" to the hourly rate requirements of the FLSA, 29 C.F.R. § 785.23; and

> Defendants' payment of a reasonable flat rate to Plaintiffs is permissible under the "homeworker's exception" to the hourly rate requirements of the FLSA, 29 C.F.R. § 785.23.

Doc. 12 at 11. With their Answer, Defendants also filed a motion for summary judgment seeking dismissal of Plaintiffs' claims under the two exceptions. Doc. 13. On May 4, 2015, the Court denied Defendants' motion. Doc. 27. The Court observed:

> The critical issue in determining application of the ["waiting to be engaged" doctrine] is "whether the employee can use [idle] time effectively for his or her own purposes." *Halferty v. Pulse Drug Co.*, 864 F. 2d 1185, 1189 (5th Cir. 1989) (citing 29 C.F.R. §§ 785.16-.17). As to the ["homeworker's exception], "[w]here an employee performs services for his employer at home and yet has long periods of uninterrupted leisure during which he can engage in the normal activities of living, . . . any reasonable agreement of the parties for determining the number of hours worked" is acceptable. *Halferty v. Pulse Drug. Co.*, 864 F. 2d at 1190 (*citing* Department of Labor, Wage and Hour Administrator Opin. Letter (March 18, 1968) (Clarence T. Lunquist, Administrator)). "This agreement should take into account not only the actual time spent in answering the calls, but also some allowance for the restriction on the employee's freedom to engage in personal activities resulting from the duty of answering the telephone." *Id.*

7

*Id.* at 6. The Court found that additional evidence was necessary to determine whether the waiting to be engaged doctrine and homeworker's exception applied in this case, and ordered that, "[t]he parties shall continue to pursue focused discovery, particularly with respect to issues regarding leisure time of putative class members." *Id.* at 9 (emphasis added).[26]

Discovery is ongoing. The discovery and deposition cutoff is December 22, 2015. Doc. 16. As of this filing, Plaintiffs have made only one opt-in plaintiff, Alfred White, available for deposition.[27] Named Plaintiffs, De Ivory Smith and Marlie Trujillo, are noticed to be deposed on the 20th and 21st of December 2015.

On November 3, 2015, Plaintiffs filed the instant motion, asserting new and novel theories not pled in their Complaint, namely that Defendants are foreclosed from relying upon the homeworker's exception and the waiting to be engaged doctrine, because Defendants allegedly failed to comply with regulations promulgated by the DOL relating to the payment of minimum wages and overtime compensation in cash, scrip, and kickback.

## LAW AND ARGUMENT

### I.  Summary judgment is improper under Federal Rule of Civil Procedure 8.

In their Complaint, Plaintiffs asserted two counts: (1) Count I asserts that Plaintiffs were entitled to be paid time-and-a-half in weeks where the total duration of their work shift exceeded 40 hours; and (2) Count II asserts that Plaintiffs were entitled to be paid an hourly rate of pay for the entirety of each dispatch shift. Doc. 1 at ¶¶ 41-58. More than six months later, and well past the May 18, 2015 deadline to amend (Doc. 16), Plaintiffs filed the instant motion asserting brand-new claims. Specifically, Plaintiffs now assert that Defendants are liable under the FLSA

---

[26] On July 7, 2015, the Court granted in part and denied in part Plaintiffs' motion for conditional certification. Doc. 39. The Court granted conditional certification of a putative class consisting of dispatchers and Unit 10s, but denied conditional certification of pool monitors.
[27] Defendants took the deposition of opt-in Plaintiff Alfred White on November 4, 2015.

8

because they paid Plaintiffs in the form of rent credits, and that the rent credits (i) do not constitute a wage because they are not cash or its equivalent, (ii) are equivalent to unlawful "scrip," and (iii) constitute an unlawful kickback.

As set forth herein, Plaintiffs' claims are without merit. But before reaching the merits of Plaintiffs' new claims, this Court should deny Plaintiffs' motion for partial summary judgment for the sole reason that Plaintiffs' motion for partial summary judgment violates Federal Rule of Civil Procedure 8 and constitutes an unfair and prejudicial surprise to Defendants.

### A.   Rule 8 and "fair notice" standard.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[28]  The function of notice pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[29] To that effect, notice pleading ensures that "defendants will not be victimized by surprise."[30]

Courts have held that a complaint fails to provide defendants fair notice of the plaintiff's claims where the complaint "does not identify the specific provisions [of statutes that the plaintiff] claims defendants have violated."[31]  In *Williams v. Potter*, the court held that the plaintiff did not give defendants fair notice of her claims where her complaint "identified the Privacy Act, Title VII, the FECA, and the LMRA as the statutory bases for her claims," but did not "identify the specific provisions she claims defendants have violated, leaving defendants and [the] court to examine every possible cause of action under the named statutes to determine if plaintiff's claims are valid." *Id.*

---

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).
[29] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir.2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)); *Twombly*, 550 U.S. at 545.
[30] *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, No. CIV. A. 96-4023, 1997 WL 705535, at *1 (E.D. La. Nov. 12, 1997).
[31] *Williams v. Potter*, 384 F. Supp. 2d 730, 734 (D. Del. 2005).

9

977526v.4

Additionally, several courts have held that simply asserting general claims or defenses under the FLSA—or claims citing to specific provisions of the FLSA—does not provide fair notice of unstated claims. Rather, every claim or defense under the FLSA must be adequately pled under Rule 8.[32] Further, a party that alleges facts concerning specific FLSA claims does not provide fair notice of all claims to which may be analogous to the FLSA claim.[33]

**B. Plaintiffs' assertion of new claims for the first time in their motion constitutes an unfair and prejudicial surprise to Defendants under Rule 8.**

Applying the foregoing here, Plaintiffs plainly failed to provide fair notice in their Complaint of their new claims and therefore, partial summary judgment on those claims is improper. First, while Plaintiffs specifically assert claims for minimum wage and overtime compensation, Plaintiffs' complaint is devoid of any reference to (1) Section 203(m), the statutory provision defining wage and imposing restrictions on the form of wage where it is not cash or its equivalent; (2) 29 C.F.R. § 531.27, the regulation on the form of wage in cash or its equivalent; (3) 29 C.F.R. § 531.43, the regulation on "scrip" payment; or (4) 29 C.F.R. § 531.27, the regulation on "kickback." Plaintiffs' assertion of claims generally under the FLSA is not otherwise sufficient to encompass their new claims.[34] Second, Plaintiffs have not pled any facts concerning their new arguments, much less "enough to raise a right to relief above the

---

[32] *See Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014) (holding that the plaintiffs' complaint which asserted FLSA claims failed to provide fair notice of a collective action claim under the FLSA where the plaintiffs failed to sufficiently allege facts concerning other proposed parties who are similarly situated); *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 302 F.R.D. 416, 422 (S.D. Tex. 2014) (finding that "invocation of specific statutory exemptions" is "sufficient" to meet the fair notice standard when applying *Twombly* and *Iqbal*'s claim pleading standards to pleading FLSA affirmative defenses); *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 924 (D. Minn. 2010) ("The argument an employer need only plead that its employees are exempt from the FLSA's overtime provisions to preserve all conceivable exemptions is contrary to the pleading standards announced by the Supreme Court in [*Twombly* and *Iqbal*]"); *Galera v. Relief Net Rd. Servs., Inc.*, No. 3:13-CV-4723-L, 2015 WL 1931364, at *4 (N.D. Tex. Apr. 28, 2015) (finding that affirmative defense provided fair notice under *Twombly* and *Iqbal* where defenses identified the specific provisions, Sections 7 and 13, of the FLSA).

[33] *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 814 (N.D. Tex. 2009) (holding that plaintiff complaint failed to provide fair notice to defendants where the "complaint explicitly asserts claims for relief under the FLSA, but it [did] not give notice of any state-law claims" under those same facts).

[34] *See Flores*, 55 F. Supp. 3d at 940; *Potter*, 384 F. Supp. 2d at 734.

speculative level." *Twombly*, 550 U.S. at 555. Nowhere in the Complaint do Plaintiffs allege that Defendants' ***form of payment*** of rent credits violates Section 206 or Section 207 or otherwise allege that rent credits fail to constitute a wage, are not cash or its equivalent, are equivalent to unlawful "scrip," or are unlawful "kickback." As to these new claims, Plaintiffs have failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Finally, Plaintiffs did not raise these arguments until the filing of their motion. Plaintiffs did not amend their Complaint when they were educated on April 1, 2015 as to the applicability of the homeworker's exception and waiting to be engaged doctrine by Defendants' answer and motion for summary judgment. Plaintiffs did not raise these claims when the Court ordered focused discovery as to the applicability of these exceptions on May 4, 2015. Plaintiffs' blatant violation of Rule 8 offends the underlying purpose of notice pleading, which ensures that Defendants have fair notice and "will not be victimized by surprise."[35]

On the eve of the December 22, 2015 discovery deadline, Plaintiffs' attempt to insert new claims—and, indeed, obtain summary judgment on them—should be rejected.

## II.   Summary Judgment is also improper because Plaintiffs' arguments are legally flawed and factually disputed.

### A.   <u>Standard for Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should only be granted "when the pleadings and evidence demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."[36] "A fact is material if it "might affect the outcome of the suit under the governing law."[37] A summary judgment is not a

---

[35] *Chaney,* 1997 WL 705535, at *1.
[36] *Curtis v. Anthony*, 710 F. 3d 587, 594 (5th Cir. 2013).
[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

proper substitute for a trial of disputed issues of fact.[38]  The Court views the evidence in the light

most favorable to the nonmoving party,[39] and draws all reasonable inferences in its favor.[40]

### B. The Court's threshold inquiry remains whether the "waiting to be engaged doctrine" and/or the "homeworker's exception" applies.

In their motion for partial summary judgment, Plaintiffs rely on the fundamentally flawed

premise that: "Regardless of whether [the waiting to be engaged doctrine or the homeworker's

exception] may apply, **payment of a minimum 'wage' to the Plaintiff is a predicate to**

**Defendants' ability to rely on either of these exceptions.**"[41]

Under this Court's prior holding, the threshold inquiry is whether Defendants

successfully rebut the presumption that sections 206 and 207 of the FLSA (and, by extension, the

various regulations promulgated by the DOL pursuant to the FLSA) apply to Plaintiffs:

> The provisions of the FLSA are presumed to apply to employees such as Plaintiffs. *Vela v. City of Houston,* 276 F.3d 659, 666 (5th Cir. 2001). **Defendants are entitled to rebut this presumption by establishing, for example, that the "waiting to be engaged" doctrine or "homeworker's exception" applies.** *See Meza v. Intelligent Mexican Marketing, Inc.,* 720 F.3d 577, 581 (5th Cir. 2013) ("The employer must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable.").[42]

In light of the foregoing, any finding of liability by this Court prior to its application of the two

exceptions would be in derogation of the law of this case.  Consistent with its prior order, the

Court should deny Plaintiffs' motion, allow the parties to continue focused discovery on these

---

[38] *Jackson Tool & Die. Inc. v. Smith*, 339 F.2d 88, 91 (5th Cir. 1964)("Summary Judgment can be granted only if there is no genuine dispute as to any material fact. This requirement is to be strictly construed as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial."); *see also Gross v. Southern Railway Co.*, 414 F. 2d 292 (5th Cir. 1969). The Fifth Circuit has not mandated a different standard for non-jury trials. *See US F&G Co. v. Planters Bank and Trust Co.*, 77 F.3d 863, 866 (5th Cir. 1996).

[39] *Gills v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002).

[40] *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001).

[41] Doc. 62-1 at 6 (emphasis added).

[42] Doc. 27 at 6 (emphasis added) (also cited as *Smith v. Manhattan Mgmt. Co., LLC*, No. CIV.A. 14-2623, 2015 WL 1980046, at *3 (E.D. La. May 4, 2015)); see also *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) ("The law of the case doctrine provides that once a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988)).

issues,[43] and then make the threshold determination of whether Defendants successfully rebut the presumption that Sections 206 and 207 of the FLSA apply to Plaintiffs.

C. **Payment in cash or its equivalent is not a predicate to application of the waiting to be engaged doctrine and/or the homeworker's exception.**

Plaintiffs argue that Defendants cannot rely upon the waiting to be engaged doctrine and/or the homeworker's exception because they did not pay Plaintiffs in cash or its equivalent under 29 C.F.R. §531.27.[44] Notwithstanding that Defendants' compensation in rent credit is lawful under the FLSA (Section III, *infra*), payment in cash or its equivalent is not a predicate to the application of the waiting to be engaged doctrine and/or the homeworker's exception. Rather, the key inquiry is whether there is a reasonable compensation agreement between the parties.[45]

The Fifth Circuit concisely set forth the basis for these exceptions in *Halferty v. Pulse Drug Company, supra*:

> The FLSA's minimum wage and overtime requirements, set forth in 29 U.S.C. § 206(a)(1) and § 207(a)(1) (1982), are designed to apply readily and easily to workers whose jobs require them to show up at specific hours and to work more or less continuously while on their employers' premises. Like Halferty [a telephone dispatcher who worked from her home], however, not all workers have jobs that conform to such a pattern. As a result, [ ] the courts have fashioned the so-called "waiting to be engaged" and "homeworker's" doctrines to make it possible to determine the compensation that such workers deserve under the FLSA.
>
> These doctrines operate in different ways. The waiting to be engaged doctrine, as discussed more fully below, may entitle [or disentitle] workers to receive

---

[43] *Smith v. Manhattan Mgmt. Co., LLC*, No. CIV.A. 14-2623, 2015 WL 1980046, at *4 (E.D. La. May 4, 2015) ("The parties shall continue to pursue focused discovery, particularly with respect to issues regarding leisure time of putative class members. Defendants may re-urge their motion at an appropriate time thereafter.").

[44] Doc. 62-1 at 9-12. 29 C.F.R. §531.27 implements sections 206 and 207 ("Standing alone, sections 6 and 7 of the Act require payments of the prescribed wages, including overtime compensation, in cash or negotiable instrument payable at par.").

[45] *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 269 (5th Cir.) *opinion modified on reh'g*, 826 F.2d 2 (5th Cir. 1987) ("Whether either the homeworker's exception or the waiting to be engaged doctrine would apply is dependent upon the agreement of the parties.") (hereinafter, "*Halferty I*").

977526v.4

compensation for periods of inactivity when they spend such periods waiting on their employers. The homeworker's exception, by contrast, **may allow an employer to pay an employee according to a reasonable compensation agreement <u>instead of the FLSA's specific hourly rate requirements</u> when the employer cannot determine the exact hours that the employee works.**[46]

Thus, contrary to Plaintiffs' argument, Defendants' payment in cash or its equivalent under 29 C.F.R. §531.27 is not a predicate to the Court's application of either exception. If the Court finds that the waiting to be engaged doctrine and/or the homeworker's exception apply in this case, Defendants are permitted to pay Plaintiffs according to a reasonable compensation agreement *instead* of the specific requirements set forth in Sections 206 and 207.

In determining whether a compensation agreement is reasonable, courts broadly consider all facts and circumstances, including the form of the wages paid and the value of non-monetary benefits received by the employee. As the Sixth Circuit stated in *Brock v. City of Cincinnati*:

> The key question is whether the agreement the parties reached is reasonable, meaning one out of a variety of acceptable agreements. A court's task is not to find *the* reasonable agreement, for none exists. Instead, **a court must ascertain whether *this* agreement falls within a broad zone of reasonableness, considering its terms and all of the facts and circumstances of the parties' relationship.**[47]

In *Brock*, plaintiffs were police officers in the canine unit and brought claims against the city for failure to pay the officers adequate compensation at the overtime rate for canine-care work performed at home while off duty, in violation of the FLSA.[48] The court applied the waiting to be engaged doctrine and homeworker's exception and held that an agreement to pay straight-

---

[46] 864 F. 2d at 1189 (hereinafter "*Halferty II*") (emphasis added).

[47] *Brock*, 236 F.3d 793, 806 (6th Cir. 2001) (emphasis added); *see also id.* at 795 ("We conclude that the district court did not properly analyze how much of the officer's efforts amounted to FLSA 'work' and did not consider all of the facts and circumstances of the parties' relationship in evaluating the fairness of the agreement. Because we conclude as a matter of law that the parties reached a reasonable agreement, and that the FLSA permits reasonable agreements fixing the amount of compensation in situations like this one, we reverse the district court's judgment.").

[48] *Brock*, 236 F.3d at 795.

14

977526v.4

time compensation of seventeen minutes per day for off-duty dog care was reasonable, citing in part to non-monetary benefits received by the officers:

> [C]anine handlers and their families enjoy a highly trained family pet largely at City expense. [ . . .] Cincinnati provided Canine Unit members a variety of benefits not given to other officers. Two ordinary working days per 28–day cycle are devoted to training, and officers get one eight-hour "dog day" per 28–day period, which is a day's worth of compensatory time to cover the off-duty, otherwise uncompensated, time spent caring for the dog. A canine officer has no out-of-pocket expenses associated with the dog: the Police Division pays for food and veterinary care and builds a professional-style kennel at the officer's home so that the dog can spend time in the weather developing a suitable coat. Officers are assigned a take-home, specialized police cruiser that they can use for any police-related activity. Finally, the officers regularly travel to police dog competitions, sometimes at City expense and often while on duty, to show their dogs and meet with handlers from around the country.[49]

"A highly trained family pet" is not cash; nor is a pet readily negotiable, freely disposable, or payable on demand.  Moreover, the city's payment to the officers of straight-time compensation of seventeen minutes per day falls well outside of the specific hourly rate requirements set forth in Sections 206 and 207.  Thus, the Sixth Circuit's holding in *Brock* makes clear that payment of the minimum wage in cash or its equivalent is not a predicate to application of these exceptions to the FLSA.[50]  Rather, the key inquiry—*after* the threshold determination of whether the exceptions apply—is whether the agreement is reasonable.

The Fourth Circuit is in accord. In *Myers v. Baltimore County, Maryland*, the plaintiffs were park caretakers, who were required to "provide twenty-four hour park presence for security purposes, [ ] to deter vandalism and to have someone on hand to summon the police, fire

---

[49] *Brock*, 236 F.3d at 795, 796.
[50] *Brock*, 236 F.3d at 795 ("We conclude that the district court did not properly analyze how much of the officer's efforts amounted to FLSA 'work' and did not consider all of the facts and circumstances of the parties' relationship in evaluating the fairness of the agreement. Because we conclude as a matter of law that the parties reached a reasonable agreement, and that the FLSA permits reasonable agreements fixing the amount of compensation in situations like this one, we reverse the district court's judgment.").

department, or an ambulance if an irregular situation arose."[51] Like Plaintiffs, "[t]he caretakers assert[ed] that because their only compensation for being on duty twenty-four hours a day was housing and water use, [their compensation agreement] violated the minimum wage and overtime provisions of the FLSA on its face."[52] But the court applied the waiting to be engaged doctrine and homeworker's exception, to hold that the caretakers' compensation agreement was reasonable (even though some benefits to the caretakers were not quantifiable):

> [T]he Caretakers received rent-free accommodation in or near a county park and free water, which is a substantial benefit. Furthermore, there were clearly other benefits to living in the park that would be difficult to quantify. Living in the park was a unique opportunity for the Caretakers-an environment that most people go out of their way to visit was immediately available to them.[53]

Under *Brock* and *Myers*, Plaintiffs' argument that payment of a minimum wage in cash or its equivalent is a prerequisite to application of the waiting to be engaged doctrine and/or the homeworker's exception should be rejected.

In addition, the jurisprudence cited by Plaintiffs concerning Section 203(m) is easily distinguished.    For example, in *Pedigo v. Austin Rumba, Inc.,*[54] waiters, waitresses, and bartenders sued their employer for violations of the FLSA, including not paying minimum wage or overtime wages. The employer paid the statutorily mandated $2.13 per hour plus tips, which they improperly shared with dishwashers, and then attempted to credit tips towards its minimum wages/overtime obligations under the tip credit Section 203(m).    However, Section 203(m) explicitly provides that in order to invoke the tip credit exception, the employer must inform its

---

[51] *Myers*, 50 F. App'x 583, 586-87 (4th Cir. 2002).
[52] *Id.* at 587.
[53] *Id.* at 587-88, 589 (citing *Brock*, 236 F.3d at 807 (explaining that non-monetary support the city provided reasonably compensated the plaintiffs for any deficiency in compensation)); *see also, e.g., Barraza v. Pardo*, 985 F. Supp. 2d 1369, 1374 (S.D. Fla. 2013) (finding that "[a]s a simple matter of contract formation, the plane ticket is clearly part of the bargained-for exchange" in the compensation agreement between a housekeeper and her employers).
[54] 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010).

employees of the tip credit and must not require tipped employees to share their tips with any employee who does not customarily and regularly receive tips. The court held that because the restaurant violated those two essential elements to invoke the tip credit exception in Section 203(m), it was not entitled to rely on the tip credit provision and was thus liable under the FLSA.[55]  Plaintiffs' line of cases is inapposite.  First, neither the waiting to be engaged doctrine nor the homeworker's exception are contained in Section 203(m).  More importantly, these cases merely stand for the proposition that where an employer relies on an exception, it must comply with each of the requirements of the *exception* it invokes—not that the employer must prove that it has complied with the *provisions* of the FLSA from which it contends it is excepted in the first place.

Here, if after its threshold inquiry, the Court determines that the waiting to be engaged doctrine and the homeworker's exception apply under *Halferty II*, it must consider *all* of the pertinent facts and circumstances in evaluating the reasonableness of the compensation agreement.[56]  These facts and circumstances include without limitation that: Plaintiffs were residents of Forest Isle *prior* to accepting extra work as telephone dispatchers and/or Unit 10/property monitors;[57]  Plaintiffs had day jobs, but accepted the extra work at Forest Isle for the

---

[55] And in *Lopez v. La Hacienda Mexican Grill, Inc.*, No. 8:13-CV-350-T-33MAP, 2013 WL 2949137, at *3 (M.D. Fla. June 14, 2013), the court found that an employer violated the FLSA's minimum wage and overtime requirements where the plaintiff provided uncontroverted facts that he never received the minimum wage of $2.13 plus tips, was only paid in tips, and was never informed about the tip credit provision of Section 203(m).  Under those facts, the court ruled that the tip credit provision did not apply and the plaintiff was entitled to be paid the statutorily minimum wage of $7.25 per hour for the hours he worked.

[56] *Halferty*, 864 F.2d at 1191 (quoting 29 C.F.R. § 785.23)("[A]n employer can pay the employee according any reasonable agreement that takes into consideration all of the pertinent facts.").

[57] For example, Plaintiff De Ivory Smith applied to become a dispatcher on 1/9/12, *see* Employment Application of De Ivory Smith at FOREST_ISLE-000552, approximately sixteen months after to her entering into her lease agreement with Forest Isle, *see* De Ivory Smith Lease, attached hereto as Exhibit G-9, at FOREST_ISLE-000569; Alfred White Deposition at 23.

express benefit of receiving credits to their pre-existing rent obligations;[58] Plaintiffs received credit to their rent obligations for each night they were on duty regardless of whether they actually performed any work;[59] and Plaintiffs agreed to and continued to work for credit to their rent obligations under the compensation agreement without objection.[60]

In sum, the Fifth Circuit held in *Halferty II* that where the waiting to be engaged doctrine and the homeworker's exception apply, an employer may pay its employees according to "a reasonable compensation agreement *instead* of the FLSA's specific hourly rate requirements."[61] The compensation agreement must fall "within a broad zone of reasonableness, considering its terms and all of the facts and circumstances of the parties' relationship," including but not limited to non-monetary benefits—*i.e.*, non-cash and non-cash equivalent benefits.[62] As a result, Plaintiffs' argument that Defendants cannot rely upon the two exceptions because they did not pay Plaintiffs in cash or its equivalent fails as a matter of law.

## III.    Defendants' payment in rent credits is lawful under the FLSA.

### A.  Rent credits are cash equivalent and are not unlawful "scrip."

Even assuming *arguendo* that Plaintiffs' complaint included the claims upon which Plaintiffs base their motion, and further accepting Plaintiffs' illogical argument that Defendants must satisfy the payment requirements of the FLSA before invoking the waiting to be engaged doctrine and the homeworker's exception, partial summary judgment is still improper because Defendants' payment of rent credit is a lawful wage under the FLSA.

---

[58] For example, Plaintiff De Ivory Smith worked as a teacher while she worked as a dispatcher. *See* Employment Application of De Ivory Smith at FOREST_ISLE-000552. Opt-in plaintiff Alfred White worked for the Marines during the same time that he worked as a Unit 10/property monitor. Alfred White Deposition at 10-13.

[59] *See* De Ivory Smith Email and Dispatch Log for 4/18/13 at FOREST_ISLE-000435.

[60] *See* Alfred White Deposition at 164-165, 175; Declaration of Anna MacLellan at ¶ 13; Declaration of Willie Williams at ¶ 13; *see, e.g.*, *Krause v. Manalapan Twp.*, 486 F. App'x 310, 313-314 (3d Cir. 2012) (finding that a compensation agreement was reasonable because, inter alia, the plaintiffs agreed to work for the specified form of payment (comp time) and never complained that their pay was inadequate.").

[61] *Halferty II*, 864 F.2d at 1189 (emphasis added).

[62] Brock, 236 F.3d at 806; *Myers*, 50 F. App'x at 586-87, 589.

977526v.4

Plaintiffs make the flawed arguments that Defendants' payment of rent credit is not "cash or cash equivalent" under 29 C.F.R. § 531.27, 29 C.F.R. § 531.34, and 29 C.F.R. § 531.35, and the effect of Defendants' payment of rent credit "is as if Defendants did not pay Plaintiffs at all under the FLSA." Doc. 62-1 at 9-12. However, rent credits are equivalent to cash because the rent credits were applied as a cash payment to Plaintiffs' pre-existing rent obligations.[63] Plaintiffs did not live at Forest Isle because they worked for Defendants; rather, they were first residents of Forest Isle who voluntarily signed up to work for Defendants in or near their homes to off-set their rent obligations.[64] Residents of Forest Isle, including Plaintiffs, are required to pay their rent in the **cash amount** specified in their lease.[65] By agreement, Defendants applied the rent credits as a **cash payment** to Plaintiffs' pre-existing rent obligations, every monthly pay period, depending on the number of shifts Plaintiffs signed up to work.[66] Moreover, by receiving compensation in the form of rent credit, Plaintiffs had more cash on hand from their day jobs to spend on whatever they wanted, including groceries, hobbies, etc., which, as set forth above, is a benefit of Plaintiffs' bargain.[67] Additionally, where Plaintiffs undertook additional work that exceeded what their rent credits were intended to compensate, Defendants paid Plaintiffs additional monies in check.[68]

---

[63] Money is fungible. *United States v. McFarland*, 311 F.3d 376, 406, n. 48 (5th Cir. 2002) ("'Money, of course, is a classic fungible commodity; showing its movement interstate may be completely impossible where all that moves is cash recorded, if at all, as an intangible on someone's records or in someone's memory.'") (quoting *United States v. Perez*, 426 F.2d 1073, 1080-81 (2d Cir.1970)); *In re Swiftco, Inc.*, No. 85-07083-H1-5, 1988 WL 143714, at *13 (Bankr. S.D. Tex. Oct. 5, 1988) ("Fungible goods in an established, liquid market can be considered indubitably equivalent to one another. Of course, cash is the best equivalent, as it is the most fungible commodity."); *Fields v. Keith*, 174 F. Supp. 2d 464, 479 (N.D. Tex. 2001), *amended* (Mar. 28, 2001), *aff'd*, 273 F.3d 1099 (5th Cir. 2001) ("As Fields correctly notes, cash is fungible. When one makes a deposit, she is entitled to have her account increased by the amount of the deposit").

[64] Alfred White Deposition at 164-165.

[65] *See* De Ivory Smith Lease at FOREST_ISLE-000569; Alfred White Deposition at 14, 174.

[66] *See* Rachelle Lee Resident Ledger, attached hereto as Exhibit G-10; Deposition of Alfred White at 53-55.

[67] Deposition of Alfred White at 174-175; Declaration of Anna MacLellan at ¶ 14; Declaration of Willie Williams at ¶ 14.

[68] *See* Email and Attachment Regarding Payment in Check to Opt-in Plaintiff Rachelle Lee, Exhibit G-2.

Defendants' argument that rent credits are unlawful "scrip" is also flawed.  The case law and regulations that Plaintiffs cite are appositive to this case.  First, the policy considerations requiring the payment of wages in cash or its equivalent, not "scrip,"—to prevent an employee from "ow[ing] [his] soul to the company store"[69] and to provide employees "both the freedom and responsibility to allocate his minimum wage among competing economic and personal interests"—are not offended by Defendants' payment of rent credits.  Again, Plaintiffs are not bound to live at Forest Isle by virtue of their occasional dispatch and Unit 10/property monitor work.  Instead, Plaintiffs chose to live at Forest Isle and for their convenience they signed up to work in or near their homes to pay less rent and to contribute to their living environment.[70]  By receiving a credit of cash payment to their pre-existing rent obligation, Plaintiffs' other monies are freed up for them to allocate "among competing economic and personal interests."

The cases Plaintiffs cite are distinguishable.  As an initial matter, Plaintiffs cite extensively to and indeed modeled their "cash or its equivalent" and "scrip" arguments on *Parr v. State of California*,[71] a district court opinion that was **withdrawn**.  An opinion which is withdrawn has "no precedential value."[72]  Even if the Court was to consider *Parr*, it is apparent that *Parr* does not support Plaintiffs' arguments.  In *Parr*, employees of the state defendant specifically alleged that their compensation in the form of "registered warrants" or promises to pay in the future violated the "cash or its equivalent" requirement detailed in the regulations.[73]  Due to a budget impasse, the state, which normally issued compensation in "regular warrants" or

---

[69] Doc. 62-1 at 10 (citing *Brennan v. Heard*, 491 F. 2d 1, 4 (5th Cir. 1974); *McLaughlin v. Richland Shoe, Co.*, 486 U.S. 128 (1998).
[70] Deposition of Alfred White at 27-28, 164-165; Declaration of Anna MacLellan at ¶¶ 6-7, 14; Declaration of Willie Williams at ¶¶ 6-7, 14.
[71] *Parr v. State of Cal.*, 811 F. Supp. 507 (E.D. Cal. 1992), *opinion withdrawn* (Mar. 1, 1995).
[72] *Lakeland Lounge of Jackson, Inc. v. City of Jackson, Miss.*, 973 F.2d 1255, 1260 (5th Cir. 1992); *S. Pac. Co. v. Eades*, 449 F.2d 11, 12, n. 2 (5th Cir. 1971); *Lewis v. Foti*, No. CIV. A. 95-0334, 1996 WL 175004, at *10, n. 7 (E.D. La. Apr. 12, 1996).
[73] 811 F. Supp. at 508.

checks, instead issued "registered warrants" which were promises to pay in the future.[74] The court determined that the "registered warrants" were not equivalent to cash because some plaintiffs could not redeem them at financial institutions or experienced extreme difficulty in redeeming them.[75] Notably, the state did not dispute that the payment in the form of "registered warrants" was not "cash or its equivalent;" instead, the state argued that the FLSA requirement to pay wages in "cash or its equivalent" violated the Tenth Amendment.[76] The *Parr* opinion has no application to Defendants' payment of rent credit. Unlike in *Parr*, Defendants' payment of rent credit is not a future promise to pay. Plaintiffs' payment in rent credit was automatically redeemed as cash promptly and consistently each monthly pay period.

Similarly, *Fleming v. Pearson Hardwood Flooring Co.*[77] does not support Plaintiffs' argument that payment of rent credit constitutes unlawful "scrip." In *Fleming*, the court found that the defendant violated the FLSA by issuing to its employees "scrip" or "certificate of indebtedness" in *lieu* of cash wages.[78] The scrip had no regular redemption date and was not uniformly negotiable at par.[79] The employees frequently had to "'shave' or discount the scrip in order to obtain cash or other value for it; and frequently found it necessary to pay prices in excess of the regular cash prices of local merchants in order to use the scrip in trade."[80] As such, the plaintiffs were only able to redeem as little as "15 per cent of the face value of the scrip," which dropped the value they received from their wages far below minimum wage.[81] As with *Parr*, *Flemming* has no applicability to the facts of this case. Defendants' payment of rent credit

---

[74] *Id.* at 509.
[75] *Id.* at 510-11.
[76] *Id.*
[77] 39 F. Supp. 300 (E.D. Tenn. 1941).
[78] *Id.* at 302.
[79] *Id.*
[80] *Id.*
[81] *Id.*

is not a certificate of indebtedness.  Further, unlike the plaintiffs in *Flemming*, Plaintiffs receive in cash value the exact amount that they agreed they would be compensated for the time worked.

Third, Plaintiffs' characterization of the use of rent credit "certificates" as akin to "scrip" is incorrect.  Defendants' issuance of rent credit certificates is a record-keeping function.[82]   Defendants provide dispatchers and Unit 10/property monitors a rent credit "certificate" to notify them of the cash amount they would receive in credit to their rent for the pay period.  These certificates are also provided in case Defendants erroneously calculate the amount due, so that the individual may inform Defendants of the error.  Defendants' use of the rent credit certificate falls squarely within the bounds of permitted use contemplated by 29 C.F.R. § 531.34 because they are used to "conveniently and accurately measur[e] wages earned."[83]

### B. Rent credits are not "kickback".

Summary judgment should also be denied as to Plaintiffs' argument that the payment of rent credits constitutes kickback.  29 C.F.R. § 531.35 provides that wages must be paid "finally and unconditionally or 'free and clear,'" and portions of wages that the employee "'kick-backs' directly or indirectly to the employer or to another person for the employer's benefit" do not count towards the minimum wage and overtime requirements.  As both Plaintiffs concede and the law provides, portions of wages paid constitute unlawful kickback only to the extent that they ***primarily benefit the employer*** and causes the wages paid to ***dip below*** minimum wage

---

[82] Deposition of Alfred White at 53-55, 59-61.

[83] "[S]crip, tokens, credit cards, 'dope checks,' coupons, and similar devices are not proper mediums of payment under the Act. They are neither cash nor 'other facilities' within the meaning of section 3(m). However, the use of such devices for the purpose of ***conveniently and accurately measuring wages earned or facilities furnished during a single day period is not prohibited. . . . board, lodging, or other facilities may be furnished during the pay period in exchange for scrip or coupons issued prior to the end of the pay period.***" (emphasis added).

requirements.[84]  The cases Plaintiffs cite are distinguishable and do not support that Defendants'
payment of rent credits constitute kickback, in part or in whole.  In *Mayhue's Super Liquor
Stores, Inc. v. Hodgson*, the Fifth Circuit held that an agreement that an employee will repay to
his employer any shortages in money entrusted to him when shortages occur through
misappropriation, theft, or otherwise, violated minimum wage requirements because the
agreement "tended to shift part of the employer's business expense to the employees and was
illegal to the extent that it reduced an employee's wage below the statutory minimum."[85]  In
*Shultz v. Hinojosa*, the court held that the employer's practice of deducting from minimum
wages paid to butchers the cost of furnishing them with knives, honing steel, and a uniform was
an improper kickback to the extent it lowered the butcher's wages below minimum wage because
those items were tools of trade and primarily for the benefit of the employer, not the employee.[86]

  The key requirement under *Mahue's*, *Shultz*, and 29 C.F.R. § 531.35—that the portion of
wage "kicked back" to the employer be primarily for the benefit of the employer—is simply not
present in this case.  Plaintiffs' argument that Defendants shift portions of their business expense
onto Plaintiffs is wrong.[87]  Unlike the plaintiffs in *Shultz* who were forced, through deductions of
their wages, to buy tools of trade from their employer, and contrary to Plaintiffs' contentions,
Plaintiffs were not forced to live at Forest Isle.[88]  Rather, Plaintiffs already lived at Forest Isle,

---

[84] Doc. 62-1 at 15; *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972); *Shultz v. Hinojosa*, 432 F.2d 259, 267 (5th Cir. 1970).
[85] 464 F.2d at 1199.
[86] 432 F.2d at 267.
[87] Plaintiffs' argument that Defendants impermissibly shifts some of its business expenses by employing residents, including Plaintiffs, to perform the same duties performed hourly non-residents employees during weekday hours is factually disputed. While Defendants provide its residents with security and property monitoring services, it does so for all of its residents including Plaintiffs.  Further, during weekday hours, the dispatch and property monitor services performed by Plaintiffs are performed by hourly non-resident employees who handle numerous additional tasks and duties. *See* Job Duties of Support Services Employee, attached hereto as Exhibit G-11.
[88] Doc. 62-1 at 16.

23

had pre-existing rent obligations as residents, and decided that they wanted occasional work as dispatchers and Unit 10/property monitors to off-set their pre-existing rent obligations.

Unlike the plaintiffs in *Mahue's* who agreed to return to their employer monies entrusted to them which were misappropriated during their work, Plaintiffs did not "return" any of portion their compensation at the end of the month to Defendants. Instead, rent credits were applied as cash payments to Plaintiffs' pre-existing rent obligations promptly and automatically at the end of every pay period. Further, unlike *Mahue's* and *Schultz* where the plaintiffs were forced to deduct portions of their wages for the employer's benefit, Plaintiffs' residence at Forest Isle and payment of rent is primarily for their own benefit. Plaintiffs initially chose to live at Forest Isle, and at their convenience they signed up to work in or near their homes to off-set their rent obligations, to free up monies from their day jobs to allocate elsewhere, and to contribute to their living environment.[89]

### C. Alternatively, rent credits are a reasonable cost of facilities and lodging under Section 203(m).

Alternatively, if the Court determines that rent credits are not cash or its equivalent, Defendants may credit the reasonable cost of facilities and lodging towards their compensation of Plaintiffs under Section 203(m). Under FLSA, "wage" is defined as both cash wages and "the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."[90] Under 29 C.F.R. § 531.3 and 531.35, facilities and lodging will count towards an employer's minimum wage and overtime requirements where they are provided primarily for the benefit of the employee. "An employer may lawfully deduct from an employee's pay the reasonable cost of providing housing, even if that deduction causes the employee's cash pay to

---

[89] Alfred White Deposition at 27-28; Declaration of Anna MacLellan at ¶¶ 6-7, 14; Declaration of Willie Williams at ¶¶ 6-7, 14.
[90] 29 U.S.C. § 203(m); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822, 827 (E.D. La. 2014).

24

fall below the statutory minimum."[91]  Finally, the determination of what is a "reasonable cost" is a fact-intensive inquiry that is inappropriate for summary judgment.[92]

Thus, even if the Court determines that Defendants' payment of rent credit is not cash or its equivalent, summary judgment should be denied because under Section 203(m), Defendants may credit reasonable costs of facilities and lodging provided to Plaintiffs in the form of rent credit towards their compensation of Plaintiffs.  As detailed above, the furnishing of facilities and lodging is primarily for Plaintiffs' benefit because they already reside in Forest Isle, have pre-existing rent obligations, and may conduct their occasional work in or around their homes.  It is undisputed that Defendants customarily provide these facilities and lodging to its employees. Defendants' payment in the form of facilities and lodging is also typical in Defendants' industry of owning and maintaining apartment complexes.[93]   Whether the rent credits constitute "reasonable cost" to Defendants is a fact-intensive inquiry that is inappropriate for summary judgment.[94]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied.

---

[91] *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir.1993); *see also* 29 C.F.R. § 531.29 ("Section 3(m) applies to. . . where charges for board, lodging, or other facilities are deducted from a stipulated wage."); *David*, 37 F. Supp. 3d at 827 ("when the employer pays for 'board lodging, or other facilities,' it may add the costs of those facilities to the cash wage for purposes of complying with the FLSA minimum").
[92] *Hassinger v. Sun Way Enterprises, Inc.*, No. 6:12-CV-1052-0RL-28, 2014 WL 5438026, at *10 (M.D. Fla. May 29, 2014) (analyzing detailed facts to determine whether individual bottles of water are credited to minimum wage under 203(m)).
[93] *Id.*
[94] *Hassinger*, 2014 WL 5438026, at *10.

977526v.4

Respectfully Submitted:

_/s/ Loretta G. Mince_

Loretta G. Mince, 25796
Jeanette Donnelly, 33806
Rebecca Sha, 35317
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue
46th Floor
New Orleans, LA  70170
Telephone: 504.586.5252
Facsimile: 504.586.5250
lmince@fishmanhaygood.com
jdonnelly@fishmanhaygood.com
rsha@fishmanhaygood.com
_Attorneys for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2015, I electronically filed the foregoing Memorandum in Opposition with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_/s/ Loretta G. Mince_

26

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DE IVORY SMITH AND<br>MARLIE TRUJILLO | ) | |
| | ) | |
| | ) | CIVIL ACTION NO.:  2:14-cv-02623 B(2) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | JUDGE IVAN L.R. LEMELLE |
| | ) | |
| MANHATTAN MANAGEMENT | ) | |
| COMPANY, L.L.C., *ET AL*. | ) | MAGISTRATE JOSEPH C. WILKINSON |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |
| | ) | |

**TABLE OF CONTENTS FOR**
**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.  Exhibit A: Declaration of Nicole Borowski
2.  Exhibit B: Excerpts of Deposition of Alfred Lee White
3.  Exhibit C: Declaration of Stephen Enslow
4.  Exhibit D: Defendants' Discovery Requests
5.  Exhibit E: Declaration of Jennifer Herman
6.  Exhibit F: Declaration of Shontel Latimore
7.  Exhibit G: Declaration of Melinda Carlos
     a.  Exhibit G-1: Employment Application of De Ivory Smith
     b.  Exhibit G-2: Email and Attachment Regarding Payment in Check to Opt-in
          Plaintiff Rachelle Lee (formerly DellaVecchia)
     c.  Exhibit G-3: De Ivory Smith Email and Dispatch Log for 1/15/13
     d.  Exhibit G-4: De Ivory Smith Email and Dispatch Log for 4/18/13
     e.  Exhibit G-5: Alfred White Email and Reports for 9/24/12
     f.  Exhibit G-6: Alfred White Email and Reports for 1/29/13
     g.  Exhibit G-7: Rachelle Lee 11/22/2012 email
     h.  Exhibit G-8: Alfred White Email and Reports for 12/29/12
     i.  Exhibit G-9: De Ivory Smith Lease
     j.  Exhibit G-10: Rachelle Lee Resident Ledger
     k.  Exhibit G-11: Job Duties of Support Services Employee

8. Exhibit H: Declaration of Anna MacLellan
9. Exhibit I: Declaration of Willie Williams

1