UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DE IVORY SMITH AND MARLIE TRUJILLO<br><br>Plaintiff,<br><br>vs.<br><br><br>MANHATTAN MANAGEMENT CO., LLC AND BERK-COHEN ASSOCIATES, LLC<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: 14-2623<br><br>SECTION: (B)<br>JUDGE IVAN L.R. LEMELLE<br><br><br>MAGISTRATE: (2)<br>MAGISTRATE JUDGE JOSEPH C. WILKINSON |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO SET ATTORNEYS' FEES AND COSTS**

NOW INTO COURT through undersigned counsel, come Plaintiffs, De Ivory Smith and Marlie Trujillo ("Plaintiffs"), who respectfully submit the following Memorandum in Support of their Motion to Fix Attorneys' Fees and Costs pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") as part of the Joint Stipulation of Settlement reached between Plaintiffs and Defendants, Manhattan Management Co., LLC and Berk-Cohen Associates, LLC, which was also submitted to the Court for approval on today's date.

## I.      FACTUAL BACKGROUND

Plaintiffs and the Collective Action Class Members worked for Defendants as Dispatchers and/or Property Monitors since November 17, 2011.  They were paid a flat rate of pay without regard for how many hours they worked and were paid solely in rent credits.  Dispatchers were paid $20 for a 14-hour overnight shift and $40 for a 24-hour

weekend shift.  Property Monitors (designated by Defendants as "Unit 10") were paid $60 for a 14-hour overnight shift and $120 for a 24-hour weekend shift.

On or about November 17, 2014, Plaintiffs filed suit against Defendants on behalf of themselves and others similarly situated, alleging that Defendants were Plaintiffs employers and that through their use of a flat rate of pay rent credit scheme, Plaintiffs were not paid minimum wage and/or overtime in accordance with the FLSA.  Plaintiffs sought their unpaid wages, liquidated damages and attorney's fees and costs. (Rec. Doc. 1).  Defendants Filed an Answer and a Motion for Summary Judgment on April 1, 2015 on the grounds that they believed that the Plaintiffs were paid properly in accordance with the "Waiting to be Engaged" and/or "Home Workers" exceptions to the FLSA. (Rec. Docs. 12, 13).  Plaintiffs opposed that motion for summary judgment (Rec. Doc. 15), and on May 4, 2015, Defendants' motion for summary judgment was denied. (Rec. Doc. 27).

On April 28, 2015, Plaintiffs moved for conditional certification of their proposed FLSA Collective Action Class.  (Rec. Doc. 23).  Defendants opposed that motion. (Rec. Doc. 30).  However, on July 6, 2015, Plaintiffs' motion to conditionally certify was granted as to persons who worked for Defendants as Dispatchers and/or Unit 10/Property Monitors. (Rec. Doc. 39).

Thereafter, the parties engaged in discovery, during which Plaintiffs were forced to file two motions to compel (after which Defendants provided the information and documents they had previously refused to produce) (Rec. Docs. 43, 61, 73, 75) and Defendant filed a motion to compel (which Plaintiffs opposed and Magistrate Judge Wilkinson ultimately significantly limited Defendants' discovery request) (Rec. Docs. 42,

52) and a motion for protective order (which Plaintiffs opposed and which was ultimately largely denied).  (Rec. Docs. 84, 93).

In addition, Plaintiffs filed a motion for partial summary judgment on the issue of whether rent credits are a form of payment under the FLSA.  (Rec. Doc. 62). Although that motion was denied as not being a threshold issue, the Court left open the possibility that Plaintiffs could raise it again later in the litigation. (Rec. Doc. 83).

Plaintiffs also filed a witness and exhibit list in preparation for trial. (Rec. Doc. 76) and engaged in additional substantive trial preparation.

After extensive motion practice, the parties entered into weeks-long settlement negotiations and ultimately reached a settlement as to the wages and penalties owed to Plaintiffs.  The issue of the fees and costs to be awarded to Plaintiffs was left for the Court to decide, necessitating additional motion practice.

## II.    PLAINTIFFS' CLAIMED ATTORNEYS' FEES ANS COSTS

Plaintiffs are represented by Jody Forester Jackson and Mary Bubbett Jackson of Jackson+Jackson. Both Mr. Jackson and Mrs. Bubbett Jackson have in excess of 10 years' experience in civil litigation, have handled several collective action FLSA cases such as the instant one, and are well qualified to handle this matter.

Plaintiffs' counsel maintained contemporaneous, detailed time records regarding their work in this litigation. These records are attached as Exhibit 1 to Exhibit A, Affidavit of Jody Forester Jackson. They bill in tenth of an hour increments at an hourly rate of $200.00. Plaintiffs' counsels' hourly rate is based upon the prevailing market rates in the New Orleans area for attorneys of comparable experience and has previously been approved as a reasonable hourly rate for Jackson+Jackson by other sections of this Court.

*See e.g.*, *Oliveira v. Martins, et al.*, No. 14-282, EDLA, Doc. 54; *Soriano, et al. v. Gulf Coast Lift, et al.*, 12-2744, EDLA, Doc. 127 at p. 26 (noting that the Court has approved fees at rates above the Plaintiffs' attorneys' requested rate in other FLSA cases).

In total, Plaintiffs' counsel expended 267.5 hours associated with investigating this matter, drafting the Complaint, opposing Defendant's initial motion for summary judgment, moving for conditional certification, engaging in discovery and associated discovery disputes, researching the applicable law and facts, filing its own motion for summary judgment, trial preparation, negotiating and drafting settlement documents and drafting and filing the instant Motion to Fix Attorney's Fees and Costs.

Plaintiffs' attorneys' fees can be broken down into the following categories:

| Phase of Case | Hours Billed | Amount of Fees Claimed |
| --- | --- | --- |
| Initial Legal and Factual Investigation; Drafting Complaint and Other Case Initiating Matters | 8.3 | $1,660 |
| Opposing Defendants' Motion for Summary Judgment | 25.6 | $5,120 |
| Conditional Certification and Class Notification | 36.6 | $7,320 |
| Discovery and Discovery Disputes | 126.9 | $25,380 |
| Plaintiffs' Motion for Summary Judgment | 24.9 | $4,980 |
| Trial Documents, Preparation and General Strategy | 6.4 | $1,280 |
| Settlement Negotiation and Drafting of Settlement Documents | 16.5 | $3,300 |
| Motion to Fix Attorneys' Fees and Costs | 12.3 | $2,460 |

| **TOTAL FEES** | 257.5 | $51,500 |

In connection with these efforts, Plaintiffs incurred $1,458.99 in costs. Accordingly, Plaintiff seeks an award of attorneys fees and costs in amount of $52,958.99.

### III.   ARGUMENT

A party who is successful on his claims under the FLSA is entitled to recover costs associated with his filing and pursuing litigation.  FRCP Rule 54; 29 U.S.C. 216(b) (providing that a prevailing employee must be awarded the "costs of the action"). The FLSA also provides that "[t]he court in [an FLSA action for unpaid overtime or minimum wages] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow  a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b). This award of fees is mandatory, rather than discretionary. 29 U.S.C. 216(b); *Garment Co. v. EEOC*, 434 U.S. 412, 416 n. 5, (1978).  The purpose of this provision is to encourage private litigators to act as "private attorneys general" on behalf of enforcement of the civil rights laws so as to ensure that plaintiffs would be able to obtain  competent legal representation  for the prosecution of  legitimate nonpayment claims. *Newman v. Piggie Park Enters*., 390 U.S. 400, 401-02 (1968).

#### A.   Plaintiffs are Entitled to Recover $1,458.99 In Costs.

Federal Rule of Civil Procedure 54(d)(1) provides that the Court may award costs other than attorneys' fees to the prevailing party. A plaintiff is a "prevailing party" if the party "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372,

382 (5th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A settlement that benefits the plaintiff is generally sufficient to convey prevailing party status on the plaintiff. *Maher v. Gagne,* 448 U.S. 122, 129-30, (1980); *Hensley v. Eckerhart,* 461 U.S. 424, 433, (1983); *Buckhannon Bd. & Care Home, Inc. v. +West Virg. Dep't of Health & Human Resources,* 532 U.S. 598, 604, (2001); *see also Abner v. Kansas City S. Ry. Co.,* 541 F.3d 372, 379 (5th Cir.2008).

> Section 1920 provides that a prevailing party may recover the following costs:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

A court may award only those costs specified in section 1920, unless there is explicit statutory or contractual authority to the contrary. *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529 (5th Cir. 2001). Here, such authority derives from the FLSA, which provides that a prevailing plaintiff is entitled to recover "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts have held that costs awarded under the FLSA include all reasonable out-of-pocket expenditures, including costs beyond those normally allowed under 29 U.S.C. § 1920. *See Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) ("Under the FLSA, costs include reasonable out-of-pocket expenses"); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (holding that when a statute expressly

6

authorizes attorney's fees, as in the FLSA, the court is not limited to the costs available under Rule 54(d)).

While the Fifth Circuit has not specifically ruled on whether the FLSA allows attorneys to recover reasonable out-of-pocket expenses as costs, it has followed other circuits in allowing out-of-pocket costs for claims under fee-shifting statutes such as Title VII and the ADEA. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395–96 (5th Cir. 2003) (allowing out-of-pocket travel expenses in a claim under the ADEA); *Mota*, 261 F.3d at 529 (noting that in Title VII cases, the Court allows "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone calls, and travel costs.").

Here, plaintiffs request $1,458.99 in costs, consisting of $400 in filing fees, $105 in service costs, $22.40 in miscellaneous PACER costs, $89.49 in postage fees associated with sending out notice, $5.85 in costs incurred in skip tracing returned notice letters, $700 for the transcript of Nicole Borowski's deposition and $135.25 in photocopying costs associated with taking Ms. Borowski's deposition. These costs are reasonable and supported by the record. Moreover, though section 1920 does not encompass postage or process service costs, both of these costs are reimbursable under the FLSA. *See Sequeira Castillo v. D & P Prof'l Servs., Inc.*, No. CV DKC 14-1992, 2015 WL 6437257, at *2 (D. Md. Oct. 21, 2015) (awarding costs for service of process and postage to prevailing FLSA plaintiff); *Sales v. Bailey*, No. 2:12-CV-00056-SA-SAA, 2015 WL 1825060, at *6 (N.D. Miss. Apr. 22, 2015) (finding that FLSA authorizes recovery of postage and service of process expenses); *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F.Supp.2d

209, 214 (E.D.N.Y.2013) (approving request for costs for filing fees, fees for service of process, and the costs of transcripts of depositions in FLSA case); *Angamarca v. Pita Grill 7 Inc.*, No. 11 CIV. 7777 JGK JLC, 2012 WL 3578781, at *14 (S.D.N.Y. Aug. 2, 2012) (approving court filing fee and service of process fees for default judgment in FLSA case). Accordingly, this Court should award Plaintiffs costs in the amount of $1,458.99.

**B.**    **Plaintiffs are Entitled to Recover $51,500 In Attorneys' Fees Under the Lodestar Method**

The Fifth Circuit uses the lodestar method to calculate attorneys' fees, which is applied by multiplying the number of hours reasonably expended by an appropriate hourly rate. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 589 (2011). There is a strong presumption that an award based on the lodestar method is a reasonable fee. *See Smith & Fuller, P.A.*, 685 F.3d at 490; *see also Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 283-84 (E.D. La. 2008).

**1.**    **Plaintiffs' Attorneys' Hourly Rate is Reasonable**

In determining the reasonable hourly rate, courts look to the reasonable hourly rate for attorneys of a similar caliber practicing in the community. *See Watkins*, 7 F.3d at 458; *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The attached affidavit of Jody Forester Jackson affirms that both Jody Jackson and Mary Jackson have practiced law for over twelve years and that FLSA litigation is a core focus of each attorney's practice. The Court is itself an expert in attorney's fees and "may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *See Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940). Given counsels' experience and the fact that multiple other sections of this Court have upheld Plaintiffs' attorneys' hourly rate to be reasonable, $200 is a reasonable hourly rate. *See e.g. Oliveira v. Martins, et al.*, No. 14-282, EDLA, Doc. 54; *Soriano, et al. v. Gulf Coast Lift, et al.*, 12-2744, EDLA, Doc. 127 at p. 26 (noting that the Court has approved fees at rates above the Plaintiffs' attorneys' requested rate in other FLSA cases). No basis exists to adjust the lodestar amount on this basis.

**2.      The Time and Labor Spent by Plaintiffs' Attorneys Was Reasonable and Necessary**

This matter required extensive motion practice, much of it driven by Defendants' initial filing of a motion for summary judgment and later intransigence on several discovery issues. Plaintiffs have addressed each major phase of this litigation and discussed why the amount of time their attorneys spent on each was reasonable.

**a.      Case Initiation and Legal and Factual Research**

As an initial matter, Plaintiffs De Ivory Smith and Marlie Trujillo sought to join their claims in a previous lawsuit against Defendants by former employees, *Scott v. Manhattan Management Co., LLC, et al.,* No. 13-6805, EDLA. *See* Ex. B, 6/8/2014 Correspondence with Defense Counsel. Had Defendants not opposed that request for permission to amend, then the Named Plaintiffs' claims could have been resolved when the Scott litigation was resolved. However, instead, Defendants declined to consent to amendment, which necessitated the filing of the instant litigation. Thus, much, if not all of the fees incurred in this matter could have been easily avoided. Plaintiffs' attorneys'

spent 8.3 hours undertaking factual and legal investigation into preliminary matters prior to filing suit and drafting the initial Complaint, arranging service, addressing Defendants' request for an extension of time to respond and other case initiating matters, resulting in $1,660 in attorneys' fees.

### b.   Defendants' Motion for Summary Judgment

At the outset of this litigation, Defendants filed a motion for summary judgment along with their Answer, prior to any discovery being taken. (Rec. Doc. 13). That motion was ultimately denied, (Rec. Doc. 27), but it necessitated that Plaintiffs immediately engage in extensive research, investigation and drafting at the very beginning of this litigation to properly respond and successfully oppose that motion. (Rec. Doc. 27). Plaintiffs attorneys' spent 25.6 hours investigating, researching the law and drafting an opposition and a surreply in further opposition to that motion and related documents (Rec. Docs. 15, 22), resulting in $5,120 in attorneys' fees.

### c.   Conditional Certification of FLSA Collective Action Class

Plaintiffs filed this action as an FLSA collective action pursuant to 29 U.S.C. §216(b) and moved to conditionally certify that collective class. (Rec. Doc. 23). Defendant initially sought to stay or continue (with expedited hearing) the hearing on Plaintiffs' motion for conditional certification until after the Court ruled upon their motion for summary judgment. (Rec. Docs. 24, 25).  Plaintiff opposed those motions. (Rec. Doc. 26). The Court ultimately granted Plaintiffs' motion to conditionally certify a class consisting of employees who worked as Dispatchers and Unit 10/Property Monitors and denied Defendants' motion to stay and/or continue the hearing on that motion as moot.  (Rec. Doc. 27-28).

In addition to opposing conditional certification, Defendants also objected to Plaintiffs' proposed notice and wanted to include additional onerous language not supported by the law. The Court therefore ordered the parties to meet and confer and decide upon a mutually agreeable notice. (Rec. Doc. 39). Plaintiffs' attorneys spent additional time researching, negotiating and drafting a mutually agreed-upon notice and obtaining approval of it from the Court. (Rec. Doc. 40, 41).

Plaintiffs' attorneys also spent time discussing this matter with potential opt-in plaintiffs and filing the necessary documents to opt them in to this litigation. (Rec. Docs. 29, 54, 57, 58, 59, 60, 74). In total, Plaintiffs' attorneys spent 36.6 hours in activities related to certification, including drafting the motion, opposing Defendants' motion to stay, negotiating a mutually agreeable notice and notifying potential opt-in plaintiffs and opting them into this litigation, which resulted in incurred $7,320 in attorneys fees associated with the conditional certification phase of these proceedings.

### d.   **Discovery and Discovery Disputes**

Defendants insisted upon sending separate discovery to each plaintiff and opt-in plaintiff instead of relying upon representative discovery. Each set of discovery necessitated investigation into the facts of each plaintiff and opt-in plaintiff's claims, drafting responses with the aid of each plaintiff and opt-in plaintiff and gathering any documents available from each plaintiff and opt-in plaintiff. Plaintiffs spent necessarily time corresponding with plaintiffs and opt-in plaintiffs regarding their discovery responses, investigating their claims and preparing and finalizing responses to the discovery directed toward that plaintiff or opt-in plaintiff.

In addition, several discovery motions were brought during the discovery phase of these proceedings. Defendants initially refused to produce documents or information related to any employees other than the Named Plaintiffs and later refused to produce documents related to its payroll practices and retention of third party security personnel. Plaintiffs ultimately had to file two motions to compel on the issues before Defendants produced these plainly relevant and discoverable documents, one of which had to be withdrawn after being filed. (Rec. Docs. 43, 61, 73, 75). Plaintiffs' attorneys spent time necessarily researching and drafting these motions.

In addition, Defendants sought the production of all of Plaintiffs' and the opt-in Plaintiffs' actual emails and cell phone bills or other records for the time they worked for Defendants. (Rec. Doc. 42-2; 42-3). Plaintiffs objected to the over breadth of these requests and Defendants filed a motion to compel. (Rec. Doc. 42) Plaintiffs opposed the motion due to relevance and scope (Rec. Doc. 44) and ultimately, the Court limited Defendants' request to cellular records and an email log of only the times each plaintiff and opt-in plaintiff was actually working for Defendants, to the extent that such information was in the possession of the plaintiffs, a substantial reduction in the scope of the Defendants' initial requests. (Rec. Doc. 52). Plaintiffs' attorneys were required to spend time opposing Defendants' widely overbroad and inappropriate discovery requests.

Deposition practice in this matter was contentiousness.  Defendants stated that they intended to depose each plaintiff and opt-in plaintiff and stated that they intended to require each opt-in plaintiff to appear in this jurisdiction to be deposed.  *See* Ex. C, October 2015 Correspondence from Defense Counsel. Plaintiffs' attorneys spent

reasonable and necessary time researching the issue of whether opt-in plaintiffs are required to return to this jurisdiction to be deposed (they are not - *see, e.g., Bransfield v. Source Broadband Services, LLC,* 255 F.R.D. 447, 450 (W.D.Tenn.2008); *Gee v. Suntrust Mortgage, Inc.,* No. 10-cv-01509 RS (NC), 2011 WL 5597124, at *2 (N.D. Cal. Nov. 15, 2011)) and corresponding with counsel for Defendants regarding same. Plaintiffs' attorneys also spent substantial amounts of time corresponding with Defendants regarding the scheduling of Defendants' and their witnesses' depositions.

Ultimately, Defendants took the deposition of opt-in plaintiff Alfred White, which necessitated Plaintiffs' attorneys spending time discussing deposition procedure and preparing Mr. White for the deposition process. Plaintiffs took the deposition of Nicole Borowski, Defendants' quality of life manager, which necessitated the expenditure of additional attorney time to prepare for and take.

Defendants objected to Plaintiffs' efforts to take their corporate depositions. To prevent those depositions, Defendants filed a protective order seeking relief from 5 of the 18 topics identified in Plaintiffs' 30(b)(6) deposition notices. (Rec. Doc. 84). These objections included the relevance of topics such as Defendants' defenses to Plaintiffs' claims; Defendants' responses to Plaintiffs' discovery; and facts related to the Plaintiffs' claims in this litigation. *Id*. Plaintiffs opposed Defendants' objections and opposed the motion for protective order. (Rec. Doc. 89). Ultimately the Court found that the majority of Defendants' objections were without merit. (Rec. Doc. 93). Plaintiffs' attorneys spent reasonable and necessary time opposing Defendants' efforts to prevent it from being deposed.

In total, Plaintiffs attorneys spent 126.9 hours on discovery matters, from drafting outgoing discovery to responding to Defendants' discovery, to addressing discovery disputes and reviewing discovery responses.   Thus, Plaintiffs incurred $25,380 in attorneys' fees on this phase of this litigation.

      **e.**    <u>**Plaintiffs' Motion for Summary Judgment**</u>

Plaintiffs filed a motion for summary judgment on the issue of whether the rent credits given to Plaintiffs actually constitute payment under the FLSA. (Rec. Doc. 62). Although the court ultimately determined that this was not a threshold issue and denied the motion on that basis, the court left open that this issue could be revisited once a determination of whether and how any of the exceptions to the FLSA relied upon by Defendants applied to this case. (Rec. Doc. 83 at pp. 10-11). Thus the work done on this motion was necessary for Plaintiffs in their presentation of their case and rebuttal of Defendants' defenses to their claims.   Plaintiffs' attorneys spent 24.9 hours in connection with researching and drafting this issue, which also included dealing with Defendants' motion to continue the hearing on the motion for summary judgment, and Plaintiffs incurred $4,980 in fees related to this work.

      **f.**    <u>**Trial Documents, Preparation and Strategy**</u>

Plaintiffs' attorneys spent 6.4 hours reviewing the facts and legal issues and strategizing for trial and preparing trial documents, including drafting and filing a Witness and Exhibit List.  (Rec. Doc. 76).  Plaintiffs incurred attorney fees in the amount of $1,280 for their attorneys' work on this phase of the proceedings.

g.      **Settlement Negotiation and Drafting of Settlement Documents**

Settlement negotiations in this matter took place over a period of several weeks. Defendants did not produce a comprehensive list of the dates the Plaintiffs and opt-in plaintiffs worked or the precise amounts that they were paid. Instead, Defendants produced piecemeal information that necessitated extensive review and analysis by Plaintiffs' attorneys in order to determine to the best of their ability of the hours the Plaintiffs work and the amounts that they were paid so as to even begin to engage in settlement negotiations. In addition, because the parties reached a settlement based on a formula, Plaintiffs' attorneys spent time determining exactly what each Plaintiff and/opt-in plaintiff would recover based on the proposed settlement formulas set forth by Defendant during each settlement exchange.

Once settlement was reached, the parties spent time negotiating the terms of the Joint Stipulation of Settlement, Motion and Memorandum in Support of Approval of Settlement and related documents. Plaintiffs' attorneys' spent 16.5 hours negotiating the settlement of this matter and drafting and negotiating the settlement documents and Plaintiffs incurred $3,300 in fees during this process.

h.      **Motion to Fix Attorneys' Fees and Costs**

Defendants refused to settle the issue of the amount of mandatory attorney's fees and costs to be awarded to Plaintiffs along with the Plaintiffs' wage and liquidated damages claims. Accordingly, Plaintiffs' attorneys' were forced to research and draft the instant motion to fix attorney's fees and costs. Plaintiffs' attorneys' spent

12.3 hours researching and drafting the instant motion for attorneys fees and related documents. They incurred $2,460 in connection with this process.

All told, the amount of fees sought by Plaintiffs, as determined by the lodestar amount, is $51,500.

**C.**   **No Justification Exists to Adjust the Lodestar Calculation**

It is only in ***truly exceptional*** cases that the amount can be adjusted upward or downward by the district court based on the district court's considerations of the *Johnson* factors. *Wagner v. Boh Bros. Const. Co., LLC.*, Civ. A. No. 11-2030, 2012 WL 3637392, at *12 (E.D. La. Aug. 22, 2012); (*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Any party seeking a reduction in the amount of fees established by the lodestar calculation bears the burden of showing that a reduction is warranted by establishing that the hourly rate requested is unreasonable or the hours expended are unreasonable with sufficient specificity to give fee applicants notice of the objections. *Wagner*, WL 3637392, at *12. *Creecy*, 548 F. Supp. 2d at 284 (citation omitted). In this case, such an adjustment is wholly unwarranted.

The twelve Johnson factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with

the client; and (12) awards in similar cases. *Id.;* see also *Crosby v. Blue Cross Blue Shield of Louisiana*, Civ. A. No. 08-0693, 2013 WL139805, at *1 n.1 (E.D. La. Jan. 10, 2013).

### 1.    **The Time Spent By Plaintiffs' Attorneys Was Reasonable.**

Given the facts, the posture of this case and Defendants' positions throughout, which are set forth in detail above, the amount of time spent by Plaintiffs' attorneys spent on each of the enumerated matters was reasonable and necessary and the vast majority of the work Plaintiffs' attorneys performed was driven by Defendants' own motions or positions on the matters at issue.  Moreover, Plaintiffs' attorneys were generally successful on the motions and/or oppositions they filed. They defeated Defendants' motion for summary judgment; conditional certification was granted; Defendants produced the documents sought by them in their motions to compel; they successfully reduced the scope of Defendants' discovery requests in opposing their motion to compel and the scope of the protective order they sought by opposing their motion for protective order.  Even the work done on Plaintiffs' motion for summary judgment was reasonable and necessary, even though that motion was denied as premature at the time that it was filed. Thus, this factor weighs in favor of finding the lodestar amount reasonable and awarding Plaintiffs the full amount of fees sought.

### 2.    **Experience of Attorneys, Novelty and Difficulty of the Questions Presented and Skill Required to Perform the Legal Services Properly.**

Though it seems simple on its face, in actuality, the FLSA, and the exceptions and exemptions thereto, can be a very nuanced and it is an easily misunderstood statute.  The instant matter involved whether two highly nuanced exceptions to the FLSA applied to Dispatcher and/or Unit 10/Property Monitors and also posed the very technical question of whether rent credits constitute pay under the FLSA. Plaintiffs' counsel are well versed

in FLSA matters, and work in this field regularly.  Nevertheless, many of the defenses and issues raised in this litigation were unusual and research and evaluation of the defenses set forth by Defendants necessitated a greater expenditure of research and investigation than would be found in a general straightforward FLSA matter. Considering these factors, the time expended by Plaintiffs' counsel was reasonable and necessary to successfully proceed with Plaintiffs' claims against Defendants. Thus, Plaintiffs are entitled to an award of fees for the time their attorneys spent researching and investigating their claims and Defendants' defenses thereto. These factors weigh in favor of finding the lodestar amount reasonable and awarding Plaintiffs the full amount of fees sought.

### 3.     Preclusion of Other Employment and Time Limitations Imposed by the Case

Plaintiffs' counsel maintain a small law practice and devoted a substantial amount of their time to this case and that the number of hours required to properly and diligently represent the interests of Plaintiff may have precluded other employment by counsel. Accordingly, Plaintiffs' counsel charged them their standard rate of $200.00 per hour. Because Plaintiffs' counsel charged Plaintiffs the same rate it charges other clients, this factor weighs in favor of finding the lodestar amount reasonable and awarding Plaintiffs the full amount of fees sought.

### 4.     The Customary Fee and Type of Fee Sought

The fees sought are not based on a fixed fee or contingency.  Rather, Plaintiffs' counsel billed them at an hourly rate in one-tenth increments of an hour. See Ex. A Affidavit of Jody Forester Jackson.  As was discussed above, such a fee is typical and

customary in FLSA cases.  This factor weighs in favor of finding the lodestar amount reasonable and awarding Plaintiffs the full amount of fees sought.

> **5.** **Desirability of the Case, the Amount Involved and the Result Obtained**

The FLSA mandates an award of attorney's fees to encourage attorneys to act as private attorneys general and pursue nonpayment claims. *Newman v. Piggie Park Enters*., 390 U.S. 400, 401-02 (1968). Many nonpayment claims are of relatively small amounts and the provision of attorney's fees is to incentivize attorney's to take these claims. *See e.g., See, e.g., Laffey v. NW. Airlines, 746 F.2d 4, 11* (D.C. Cir. 1984); Therefore, the actual amount of damages awarded to an employee is less relevant in an FLSA case than it might be in other cases.  Courts routinely award fees at an amount much higher than the unpaid wages recovered.

In the instant matter, Plaintiffs claimed unpaid minimum wage and overtime, plus liquidated damages going back three years.  Ultimately, the settlement offer accepted by Plaintiffs provides that Unit 10/Property Monitors receive minimum wage for each hour they worked and overtime for each hour worked in excess of 40 per week, plus 32.5 percent liquidated damages.  Thus, these Plaintiffs recovered the full amount of wages they were owed, plus liquidated damages.  Plaintiffs who worked as Dispatchers recovered double what they were initially paid, plus 32.5 percent liquidated damages. Additionally, the Named Plaintiffs recovered a $1,000 Incentive Bonus.  Although given the nature of settlement, the Plaintiffs did not recover 100% of what they claimed, their ultimate recovery amounts to a highly favorable settlement that enables them to be compensated for lost wages without the need to endure the time and emotional expense

involved with participating in extensive litigation. These factors weigh in favor of finding the lodestar amount reasonable and awarding Plaintiffs the full amount of fees sought.

### 6.  Awards in Similar Cases

Plaintiffs' claimed fees are commiserate with fees that have been awarded to Plaintiffs in other cases. In addition, those fees are commiserate with fee awards for Plaintiffs' counsel that have been deemed appropriate in other FLSA cases within this Circuit. *See e.g., Trammell, et al. v. Amari of Louisiana, LTD, et al.*, No. 2:13-cv-04583, EDLA, Docs. 42, 43 (approval of $52,525.00 in attorneys fees); *Pace, et al. v. Maximum Staffing, LLC, et al.*, No. 2:10-cv-02832, EDLA, Doc. 30 (approval of $25,612.32 in attorneys fees); *Soriano, et a. v. Gulf Coast Lift, LLC, et al.*, No. 12-2447, EDLA, Doc. 127 (award of $75,500.00 in attorneys fees).

### Conclusion

For the reasons discussed in detail above, Plaintiffs' Motion to Fix Attorney's Fees and Costs should be granted and Plaintiffs should be awarded $51,500 in attorneys fees and $1,458.99 in costs.

Respectfully submitted,

/s/ Mary Bubbett Jackson_____
Jody Forester Jackson, (La. Bar No. 28938)
Mary Bubbett Jackson, (La. Bar No. 29110)
**JACKSON+JACKSON**
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
T: (504) 599-5953
F:  (888) 988-6499
E: jjackson@jackson-law.net
    mjackson@jackson-law.net
Attorneys for Plaintiffs

<u>**CERTIFICIATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was sent to all counsel of record via this Court's CM/ECF system, this 8th day of February, 2016.


*/s/ Mary Bubbett Jackson* _____